Luther ARTIS, Plaintiff–Appellee,
Cross–Appellant,

v.

HITACHI ZOSEN CLEARING, INCORPORATED, et al., Defendants–Appellants, Cross–Appellees.

Nos. 90–3281, 90–3282 and 90–3369.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 17, 1991.

Decided July 9, 1992.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 18, 1992.

James R. Potter, Londrigan, Potter & Randle, Springfield, Ill., Joanne Kinoy (argued) and Miriam N. Geraghty, Kinoy, Taren, Geraghty & Potter, Chicago, Ill., for Luther Artis.

Thomas J. Piskorski, Elise A. Elconin, Marian C. Haney (argued), Seyfarth, Shaw, Fairweather & Geraldson, and William A. Widmer, III, Carmell, Charone, Widmer, Mathews & Moss, Chicago, Ill., for Hitachi Zosen Clearing, Inc.

Max G. Brittain, Jr. and John J. Murphy, Jr., Kovar, Nelson, Brittain, Sledz & Morris, Chicago, Ill., for U.S. Industry, Inc.

Before CUDAHY and MANION, Circuit Judges, and REYNOLDS, Senior District Judge.*

CUDAHY, Circuit Judge.

Luther Artis is a journeyman engine lathe operator. In 1982 U.S. Industries laid him off from his job in its Clearing division, as it had several times before during Artis' approximately 24 years with the company. As the most senior lathe operator on layoff, Artis expected to be the first to be recalled when work picked up. In 1984, however, he discovered that other lathe operators had been recalled to work ahead of him, although they had less seniority. Artis is black, the other lathe operators are white.

Artis filed charges of racial discrimination with the Illinois Department of Human Rights (IDHR) and with the Equal Employment Opportunity Commission (EEOC). Both agencies declined to pursue the charges. In 1985, Artis sued his erstwhile employer ("Clearing" or "the company")[1] and the local branch of the International Association of Machinists and Aerospace Workers under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (1988), and under 42 U.S.C. § 1981 (1988). He claimed that Clearing discriminated against him on the basis of his race in refusing to train him to use a particular kind of lathe and in failing to recall him to work in order of seniority. Artis also claimed that the company failed to recall him in retaliation for a discrimination charge he filed in 1971. The union, Artis alleged, acquiesced in Clearing's conduct.

Procedural skirmishing followed. The district court awarded summary judgment for the union on all counts and summary judgment for Clearing on the retaliation claim, decisions that Artis has not appealed. The court also dismissed the failure to train claim under section 1981 for failure to state a claim. Artis has not appealed this decision either. The court then held a joint bench and jury trial: the failure to recall claim went to the jury under section 1981, and both the failure to recall and failure to train claims were tried to the judge under Title VII.

The jury found for Artis and awarded compensatory and punitive damages. After the trial, the district court reconsidered its original decision to allow the failure to recall claim to go to the jury under section 1981. The court decided, in light of this court's decision in *McKnight v. General Motors Corp.*, 908 F.2d 104 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991), that to allege a failure to recall does not state a claim under section 1981 and vacated the jury's verdict. The court also found for Clearing on Artis' Title VII failure to train claim. Nonetheless, the court found for Artis on his Title VII failure to recall claim and awarded reinstatement, backpay, prejudgment interest, attorney's fees (with a 1.25 multiplier) and costs.

Clearing appeals from the judgment under Title VII, claiming that there was insufficient evidence, that the judge improperly relied on a vacated jury verdict and that, in any event, the verdict of the jury was tainted by numerous trial errors. Artis cross-appeals, arguing that failure to recall is a violation of section 1981 and that the jury's verdict should be reinstated. We affirm in all respects.

## I.

The proceedings below took five years to resolve. The underlying dispute took four years to develop. To avoid confusion, we reserve discussion of many of the significant details of this complex case until later in the opinion and present only a brief summary of events here.

In 1959 Artis started work at Clearing as a janitor. He slowly rose through the

---

\* The Honorable John W. Reynolds, Senior District Judge of the Eastern District of Wisconsin, is sitting by designation.

1. Hitachi Zosen Clearing, Inc. is the corporate successor of U.S. Industries. For purposes of this opinion, we will treat U.S. Industries and Hitachi Zosen Clearing as the same entity.

ranks, and after completing a training program, became an engine lathe operator in 1967. He was an apprentice lathe operator for several years and then became a journeyman in 1971 under a settlement agreement with Clearing after he filed a complaint with the EEOC.

After 1971, Artis was laid off a few times and duly called back to work in order of seniority under a collective bargaining agreement. In November 1982, Artis was laid off again, along with most of the other lathe operators, all of whom are white. He used his seniority rights to "bump down" into an assembler helper position, but was laid off from that position in January 1983. Thereafter, Artis worked intermittently as a Pinkerton's security guard. In February 1983, Clearing offered to recall Artis to the assembler helper position from which he had been laid off the month before. After making sure that refusal would not affect his right to be recalled to a lathe operator position, Artis turned this offer down. After turning down the offer Artis continued to work for Pinkerton's until, quite recently, he found another job as a lathe operator.

In January 1983, while Artis was still working as an assembler helper, Larry Hale, the Superintendent of the Machine Department, decided that he needed someone to do work on a Poreba lathe, a Polish machine with somewhat different controls than an American lathe. First, Hale asked the three lathe operators remaining on the job to do the work, although none of them had worked on the Poreba before. When all three refused he recalled lathe operators who had experience on the Poreba, first Stanley Glowacki and then John McDonnell. Hale recalled Glowacki and McDonnell in order of their seniority,[2] but passed over Artis and several white lathe operators who had greater seniority, but no Poreba experience.

In May 1984, Artis returned to the Machine Department for the first time in order to pick up some tools he had left behind. It was at this point that he first saw Glowacki and McDonnell working in the shop and realized that the company was not recalling lathe operators in strict order of seniority. He complained to the union the same day and within five months filed charges with the IDHR and the EEOC.

We turn to plaintiff's cross-appeal first.

## II.

■ In *McKnight*, a panel of this court held that a failure to recall on account of race is not a violation of 42 U.S.C. § 1981. 908 F.2d at 109–10. Nonetheless, since the court's holding was in the alternative and the author of that opinion expressed some doubt as to its correctness, *id.* at 110, we revisit the issue briefly.

Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts, ... as is enjoyed by white citizens...." In *Patterson v. McLean Credit Union*, the Supreme Court sharply limited the application of section 1981 to "the enumerated rights within its express protection." 491 U.S. 164, 181, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132 (1989). The question then is whether a company's failure to recall on the basis of race is more like a refusal to make a new contract, which is a violation of section 1981, or more like a breach of contract, which is not.

Artis argues that his old job ended when he was laid off and that Clearing refused to hire him anew. But the layoff did not cut off all of Artis' rights. Indeed, his seniority rights under the collective bargaining agreement are a central component of his affirmative case. Artis argues that a collective bargaining agreement does not contemplate that any particular individual has a right to employment, citing *J.I. Case Co. v. NLRB*, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944). But by his actions and his pleadings Artis demonstrates that he did think he had a right to return to his old job. Recall would not have established a "new employment relation" with Clearing. *McKnight*, 908 F.2d at 109. The district

**2.** Hale also tried to recall a more senior lathe operator with Poreba experience, Arunas Benu-
tis, before recalling McDonnell, but Benutis refused the recall.

court properly dismissed Artis' section 1981 claim.[3]

### III.

We turn next to the district court's treatment of the vacated jury verdict. The first step of the analysis requires us to determine what the district court actually did with the verdict. Clearing argues that Judge Moran expressed disagreement with the jury verdict but felt bound to follow it even though it had been vacated. Further, the company argues that the judge failed to make findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a). Artis takes a different view. He believes that Judge Moran agreed with the jury's verdict. Further, he argues that the court did go through the motions that Rule 52(a) requires.

Not surprisingly, the truth lies somewhere in between. At no point did Judge Moran ever express his agreement or disagreement with the jury's verdict other than to rule that it was supported by the evidence. Judge Moran did make one finding that appears to support the jury verdict. In entering judgment on the Title VII failure to train claim, the judge credited the testimony of Richard Michaels, a machine shop foreman, who testified that he had offered Artis overtime work on the Poreba in 1981. Memorandum and Order at 1–2 (March 21, 1990) (hereinafter March Mem.). "Paradoxically," the judge observed, this testimony supported the failure to recall claim: if Clearing was offering Poreba work without regard to prior experience (and with regard to seniority) in 1981, its 1983 decision to recall only workers with Poreba experience looks pretextual. *Id.*

Despite these observations, it is clear that the judge followed the verdict of the jury in entering judgment for Artis. Memorandum and Order at 3, 1990 WL 133520 (Sept. 11, 1990) (hereinafter Sept.Mem.). Moreover, because the judge relied on the jury's verdict, he could not have expressed an "independent chain of reasoning" that would satisfy the requirements of Rule 52(a). *See Mautz & Oren, Inc. v. Teamsters Local No. 279*, 882 F.2d 1117, 1125 (7th Cir.1989).

■ Having determined that Judge Moran followed the jury's verdict and did not comply with Rule 52(a), we must decide whether that disposition was proper. Clearing argues that a district court should not be bound by a jury's fact finding when it has been vacated. Indeed, the company contends that district court judges presiding over joint bench and jury trials should not be bound by the verdict of the jury at all.

■ We take these contentions in reverse order. It has long been the rule in this Circuit that a "jury's verdict, when § 1981 and Title VII claims are tried simultaneously, binds the judge on factual issues common to both claims." *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 923 (7th Cir.1991) (citing *McKnight*, 908 F.2d at 113; *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1293–94 (7th Cir.1987); and *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1421 (7th Cir.1986)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992). We have described the rule as a corollary of the constitutional right to a jury trial. *Williamson*, 817 F.2d at 1294 (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962)).

The rule is not logically necessary—a judge could disagree with a jury's factfindings without saying that they were unreasonable. *McKnight*, 908 F.2d at 113. Further, inconsistent verdicts would not necessarily deny a party its right to a jury trial.[4]

---

**3.** Section 1981 was amended soon after argument in this case. Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, 105 Stat. 1071 (1991). Application of the amendments would change the result in this case. Nonetheless, a panel of the court, with the author of this opinion in dissent, has decided that the provisions of the Act do not apply retroactively to questions of this sort. *Mozee v. American Commercial Marine Service Company*, 963 F.2d 929, 938–939 (7th Cir.1992).

**4.** In this case, for instance, if the jury verdict stood and Judge Moran entered judgment for the company on the Title VII claim, Artis would

*Id.* Nonetheless, we see no reason to overturn our precedents. Even if the rule preventing inconsistent verdicts is not required by logic or by the constitution, it has prudential value. Inconsistent verdicts would inevitably demonstrate the judge's disrespect for the jury's factfinding function. Such a judgment would cast doubt on the impartiality or rationality of either the jury or the judge. We have no desire to create such conflicts.

Two conclusions follow from the rule. First, if the court must follow the jury's verdict it is pointless for it to enter findings of fact and conclusions of law under Rule 52(a). The exercise would inevitably produce a rubber stamp of the jury's conclusion. *Id.* Further, if a district court judge does not agree with the jury's verdict, but cannot overturn it, to require the judge to follow the dictates of Rule 52(a) would impose a duty of hypocrisy. Finally, by its terms Rule 52(a) applies only when the jury is not the ultimate fact finder.[5] To the extent that a judge is bound by the jury's verdict in a joint Title VII/section 1981 trial, it has conducted a jury trial within the meaning of Rule 52(a).

■ The second conclusion is that a judge should continue to be bound by a jury's findings even if its verdict is vacated, so long as the underlying factfinding is not impugned. Again, the omnipresent *McKnight* case has already decided this issue. *Id.* In its reply brief, however, Hitachi Zosen Clearing[6] refers us to *Bailey v. Northern Indiana Public Service Co.*, 910 F.2d 406 (7th Cir.1990). *Bailey* involved another joint bench and jury trial on parallel section 1981 and Title VII claims. The jury found for the plaintiff and awarded compensatory and punitive damages. *Id.* at 409. The presiding judge, however, refused to grant any relief under Title VII, deciding that the jury's verdict

fully compensated the plaintiff. *Id.* at 413. In the process, the judge expressed sharp disagreement with the jury's findings. *Id.* at 413 n. 10. After vacating ,the jury's verdict, this court remanded for findings under Rule 52(a) and gave the lower court discretion to hold a new trial on the Title VII claims. *Id.* at 413–14.

■ *Bailey* does not mandate remand in this case for a number of reasons. First, although Judge Moran did not express any particular agreement with the jury's verdict, he did not disagree either. Perhaps more importantly, even when he vacated the jury's verdict, Judge Moran still awarded Artis full relief under Title VII. In *Bailey*, on the other hand, remand was required to give the district court an opportunity to re-evaluate the plaintiff's need for relief under Title VII because the otherwise full relief provided by the jury had been vacated. *Id.* at 413. Finally, in *Bailey* the court concluded that at least part of the jury's verdict was not supported by the evidence. *Id.* at 411. Thus *Bailey* conforms to the rule that a judge is not bound by the jury's verdict if that factfinding is impugned. *Bailey* does not mandate remand every time a district judge fails to agree with a vacated jury verdict.

## IV.

Most of Clearing's arguments are directed at the factfindings themselves. First, Clearing argues that there was insufficient evidence to support a finding of discrimination and that the trial court's judgment on Artis' failure to recall claim was clearly erroneous.

■ Before we turn to an analysis of the evidence presented at trial, however, we must resolve a tricky question about the standard of review. The parties have assumed that we must review Judge Moran's judgment under the clearly erroneous standard appropriate to bench trials under Title VII. *See Anderson v. Bessemer City*, 470

---

not be reinstated but would still receive damages under section 1981. Thus the decision of the judge would have no effect on the claims that Artis was entitled to present to the jury.

**5.** The requirements of Rule 52(a) apply only to "actions tried upon the facts without a jury or with an advisory jury...."

**6.** Although U.S. Industries and Hitachi Zosen Clearing filed a joint appellants' brief, they filed separate reply briefs.

U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). This is a demanding standard that requires us to reverse the district court's findings only if we find them "implausible." *Id.; see also Gorham v. Franzen,* 760 F.2d 786, 790 (7th Cir.), *cert. denied,* 474 U.S. 922, 106 S.Ct. 255, 88 L.Ed.2d 262 (1985). But as noted above, the district court did not make factual findings of its own for us to review. Instead, the court relied on the jury's verdict. Our approach, then, must be to review Judge Moran's denial of Clearing's motion for judgment notwithstanding the verdict (JNOV).

We review a judgment on a motion for JNOV *de novo,* and "determine whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict." *Christie v. Foremost Ins. Co.,* 785 F.2d 584, 585–86 (7th Cir.1986); *see also Tennes v. Massachusetts Dept. of Revenue,* 944 F.2d 372, 377–78 (7th Cir.1991). Thus we defer more to the verdict of a jury than to the findings of a judge, *see Goldman v. Fadell,* 844 F.2d 1297, 1300 (7th Cir.1988) (refusing to evaluate the credibility of the witnesses, "or otherwise consider the weight of the evidence"), and will review the evidence accordingly.

The main thrust of Clearing's argument is quite simple. Other than its refusal to recall Artis, no evidence was presented to the jury that the company had ever discriminated against Artis before. In fact, at trial Artis admitted testifying at a deposition that, before the recall, he had never felt discriminated against in his 24 years with the company.[7] Tr. 85–86. Further, when Clearing skipped over Artis it also skipped over several white lathe operators. Without some evidence of animus, Clearing argues, how could the jury conclude that race was a "but for" cause of its failure to recall him? *See Germane v. Heckler,* 804 F.2d 366, 368 (7th Cir.1986) ("ultimate inquiry in a Title VII disparate

treatment claim is whether a discriminatory intent was a 'but for' cause of the adverse action"); and *McQuillen v. Wisconsin Educ. Ass'n Council,* 830 F.2d 659, 664 (7th Cir.1987) (same), *cert. denied,* 485 U.S. 914, 108 S.Ct. 1068, 99 L.Ed.2d 248 (1988).

Although the argument has some intuitive appeal, an employment discrimination case is not as simple as Clearing would have us suppose. Race-based intent is hard to prove. It's not nice to utter racial epithets in the workplace, and it tends to get one sued. Most discrimination happens covertly, while the employer offers some plausible neutral criterion that happens to favor a white applicant. In response to this problem of proof, the Supreme Court allows plaintiffs to prove discrimination indirectly. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

Before a plaintiff may go on to indirect proof, he must present a prima facie showing of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In this case Artis clearly met that "not onerous" burden. *Patterson,* 491 U.S. at 186, 109 S.Ct. at 2377. Although Artis had never worked on the Poreba lathe, the company does not contend that he could not do so. Moreover, it admits that it asked similarly inexperienced lathe operators to work on the lathe before deciding to recall only lathe operators with Poreba experience. Expert testimony corroborated this evidence that Artis was fully qualified for the jobs that Glowacki and McDonnell filled. Further, unlike most plaintiffs charging discrimination, Artis had a contractual right to be recalled first.

Once Artis made his prima facie case, "an inference of discrimination arises." *Id.* (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094). Clearing then had to articulate a legitimate business purpose for choosing to bypass Artis. It did so. Hale testified that he wanted to hire a lathe operator with Poreba experience. Tr. 120.

After the company articulated a racially neutral reason for its action, Artis could

---

7. It is not clear how this statement is consistent with Artis' EEOC charge in 1971. Nonetheless, since evidence of the EEOC charge does not appear to have been presented to the jury, we take the statement at face value.

prove his case *"indirectly"* by demonstrating "that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (emphasis added). In other words, once Artis established a prima facie case, no more direct evidence of racial discrimination was required. *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 372 (7th Cir.1992) (discussing *McDonnell–Douglas* burden-shifting analysis in age discrimination case). On appeal, we need only decide whether Artis presented enough evidence for a reasonable jury to find that the company's proffered explanation was bunkum. We conclude that he did.

■ An expert witness testified that any journeyman lathe operator could start work on a Poreba lathe with very little training. Tr. 139. As noted, the foreman Michaels testified that when assigning overtime work on the Poreba, he asked people to work on it without regard to their prior experience with the machine. He did, however, offer the overtime work in order of the employees' seniority. Hale testified that he asked the lathe operators in the shop, who had no Poreba experience, to work on the machine before he chose to recall only workers with Poreba experience. Tr. 118. From this evidence a reasonable person could conclude that Clearing's expressed desire to recall workers only on the basis of the Poreba experience was not worthy of credence.

At oral argument, counsel for the company stressed that it does not matter how much time it takes to train a journeyman lathe operator to use a Poreba; Clearing is entitled to make business decisions, and it is not for this court to second-guess those decisions. We agree. *See, for example, Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1422 (7th Cir.1992). But the point is that the less sensible an employer's decision appears to be, the more likely it is that the jury will not credit it. To give an extreme example, Clearing could have claimed that it recalled Glowacki and McDonnell because they wear floppy hats. We would not disapprove if it did so. But we would not overturn the verdict of a jury that found the company's reason incredible. Although this is a much closer case, the jury could conclude that because Poreba experience is so easy to acquire, a preference for Poreba experience is like a preference for floppy hats—simply not credible. Further, the same evidence that showed that Poreba skills were easily acquired also showed that Clearing *believed* that Poreba skills were easily acquired. If it asked lathe operators to work on the Poreba in order of seniority and without reference to their experience in 1981, why did it not do so again?

It is conceivable that the company made up a reason for recalling Glowacki and McDonnell but that its real reason was not racial. The company may have wanted to recall younger, perhaps more flexible workers, those who had in the past expressed interest in learning to use new equipment. But the requirements of the collective bargaining agreement, and perhaps the prohibitions of the Age Discrimination in Employment Act, may have prevented Clearing from admitting this non-(racially)-discriminatory purpose. Because of the indirect method of proof permitted by *Burdine,* however, the company would then have to choose between the frying pan and the fire. It should not complain to us, however, if it chose to dissemble to the jury in order to avoid the union's ire.

On the other hand, it is also possible that Clearing simply cooked up the Poreba experience criterion in order to avoid rehiring Artis, solely because it did not like the color of his skin. And it may not have cared whether use of that criterion meant that the seniority rights of other white workers were violated.

As appellate judges we cannot pick among the theories [8], decide which is more plausible and impose the result that seems just. Our role is to decide whether the jury could find that the company failed to tell

---

**8.** We do not, as the dissent suggests, "conclude" that either theory is true. We are indeed speculating when we suggest reasons that Clearing might choose to dissemble. The point is only that the jury was entitled to decide that Clearing was not telling the truth, and it does not matter *why* Clearing made this choice.

the truth when it said that it recalled Glowacki and McDonnell because of their Poreba experience. The jury heard the witnesses and observed their demeanor. The company's truthfulness is a fact peculiarly within the jury's competence to determine, and their finding that it was not truthful finds support in the evidence.

## V.

Most of the remaining issues on appeal are challenges to the conduct of the trial. Clearing argues that the jury's verdict was tainted by juror bias, by the presence of a prejudicial non-exhibit in the jury room and by improperly excluded evidence. As with all motions for new trial, we review the trial court's decisions on these issues for abuse of discretion, *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984), and reverse only if they " 'strike us as wrong with the force of a five-week old, unrefrigerated dead fish.' " *Dutchak v. Central States, Southeast and Southwest Areas Pension Fund,* 932 F.2d 591, 596 (7th Cir.1991) (applying olfactory standard of clear error, *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.,* 866 F.2d 228, 233 (7th Cir.1988), *cert. denied,* 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989), to abuse of discretion review). We take the issues in descending order of significance.

### A. Juror Bias

At the conclusion of the trial, counsel for Clearing discovered that the foreman of the jury, Robert Bambic, had formed an unfavorable impression of Seyfarth, Shaw, Fairweather & Geraldson (Seyfarth), counsel's firm, many years earlier in a variety of labor-related proceedings. Further, Bambic revealed his sentiment to another juror during deliberations. Affidavit of Marian C. Haney at 1–2 (Jan. 3, 1990). Counsel presented this information to the judge, who enjoined further questioning of the jurors and later denied the company's motion for a new trial.

Clearing raises a variety of arguments. First, it complains that the district judge failed to hold an evidentiary hearing to inquire into its claims of bias. But although due process may require some sort of hearing to determine whether extraneous contacts may have affected a jury's ability to be fair, *Willard v. Pearson,* 823 F.2d 1141, 1148 (7th Cir.1987) (citing *Rushen v. Spain,* 464 U.S. 114, 119–20, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam) and *Smith v. Phillips,* 455 U.S. 209, 215, 102 S.Ct. 940, 944, 71 L.Ed.2d 78 (1982)),[9] the standard applies only to prejudicial *extraneous* contacts, not to preexisting juror bias. *United States v. Duzac,* 622 F.2d 911, 913 (5th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980).

The tool for examining juror bias is *voir dire.* Here Clearing complains that Bambic lied, and that truthful answers would have been grounds to exclude him from the jury for cause. *See McDonough,* 464 U.S. at 556, 104 S.Ct. at 850. Bambic was asked two kinds of questions relevant to our inquiry. First, he was asked whether he had been a party in any kind of legal proceeding, civil or criminal. Bambic revealed that he had been a plaintiff in a personal injury suit, but did not mention that he had been a party or a union representative in a variety of labor-related arbitrations and a National Labor Relations Board proceeding, all more than ten years before. Second, Bambic was asked in several different ways whether he knew anything that might cause counsel for the company to be concerned about his ability to be fair. Bambic had already revealed his extensive involvement with the United Steelworkers in response to other questions but again did not mention his participation in the labor proceed-

---

9. Decisions from other circuits have qualified the duty to investigate somewhat by requiring the moving party to make a showing of bias sufficient to overcome a presumption of jury impartiality. *See United States v. Ianniello,* 866 F.2d 540, 543 (2d Cir.1989) (citing *United States v. Barshov,* 733 F.2d 842, 851 (11th Cir.1984), *cert. denied,* 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985); and *United States v. Winkle,* 587 F.2d 705, 714 (5th Cir.), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979)). Given our decision that the rule does not apply, we need not reach this issue.

ings or his unfavorable impression of Seyfarth.

Judge Moran decided that the first response was a misunderstanding, not a lie. Bambic, he thought, was likely to have interpreted "legal proceedings" to mean ordinary litigation, not labor arbitrations or administrative proceedings. March Mem. at 5. The second response was not a lie either. Bambic didn't know, at *voir dire*, that Seyfarth represented Clearing. As to the contention that Bambic should have revealed his participation in labor grievances as something counsel would be worried about, Judge Moran noted that Bambic had already revealed his extensive involvement in union affairs, from which counsel should have been able to infer that he had been in grievance proceedings before. *Id.* Further, the information that Bambic gave at *voir dire* was enough for counsel to identify the occasions on which Bambic had run into representatives of Seyfarth. Counsel's decision to investigate after the jury returned an unfavorable verdict looks like sandbagging.

Even if Bambic did not tell the truth, however, Judge Moran believed that the truth would not have been grounds for a challenge for cause. *Id.* at 5–6. An unfavorable impression of Seyfarth formed after watching different lawyers in proceedings at least ten years previously was not enough, the judge held, to disqualify a juror who had sworn to be impartial. *Id.*

This latter determination takes care of Clearing's contention that Bambic should have reported his potential bias against Seyfarth when he found out that Clearing's counsel were from the firm. Even if we assume that Bambic's failure to reveal belatedly discovered bias is equivalent to a lie at *voir dire*, a question we need not resolve, it would be grounds for a new trial only if the information would have been grounds to challenge Bambic for cause.

Clearing was entitled to " 'a jury capable and willing to decide the case solely on the evidence before it.' " *McDonough,* 464 U.S. at 554, 104 S.Ct. at 849 (quoting *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982)).

Judge Moran's determinations that Bambic did not lie and was not biased do not strike us with the force of dead fish; instead they seem to be plausible resolutions of a difficult issue. Judge Moran did not abuse his discretion when he denied the company's motion for a new trial.

*B. Presence of a Non–Exhibit in the Jury Room*

During her summation, Artis' counsel used a large piece of cardboard printed with the damages she proposed. The judge allowed her to do so over the objection of Clearing because the figures on the board had already been admitted into evidence and most had been stipulated. Tr. 331. Nonetheless, the cardboard was not approved for the jury's use in their deliberations. Somehow the board went into the jury room anyway, and one juror said that she found it "helpful." Affidavit of Elise A. Olgin at 1 (Feb. 20, 1990).

Although the issue is not before us, we note that jurors should not be asked whether their deliberations were prejudiced by extraneous information or outside influences. *Haugh v. Jones & Laughlin Steel Corp.,* 949 F.2d 914, 917 (7th Cir.1991); Fed.R.Evid. 606(b). Instead, questioning must be limited to whether, in fact, a communication was made. *Haugh,* 949 F.2d at 917. Thereafter, the judge determines "whether there is a reasonable possibility that the communication altered [the jury's] verdict." *Id.* (citing *United States v. Fozo,* 904 F.2d 1166, 1171 (7th Cir.1990); *United States v. Schwartz,* 787 F.2d 257, 261 (7th Cir.1986); *Wiedemann v. Galiano,* 722 F.2d 335, 337 (7th Cir.1983)). We review this latter determination only for abuse of discretion. *Id.* at 916–17.

Judge Moran properly limited his inquiry to the content of the exhibit and concluded that it did not represent "the kind of extraneous prejudicial information that taints a verdict." March Mem. at 6. We agree. The jury's verdict was close, but only as to Clearing's liability. Most of Artis' damages, by contrast, were stipulated. No matter how the jury viewed the evidence on

damages, its verdict was unlikely to change. Our cases also show extreme deference to the trial court's evaluation of the likely effect of an accidentally presented exhibit. Recently, in a somewhat analogous case, government binders that presented evidence in a light favorable to the government wound up in the jury room. *United States v. Best*, 939 F.2d 425 (7th Cir.1991) (en banc), *cert. denied,* — U.S. ——, 112 S.Ct. 1243, 117 L.Ed.2d 476 (1992). Although the jury had not seen the evidence presented in that manner before, *id.* at 427, we still upheld the trial court's determination that there was no reasonable possibility that the binders altered the verdict. *Id.* at 429–31. Here, of course, the jury had seen the evidence presented in this manner before. As Judge Moran observed, the presence of the board in the jury room had no more effect than if the closing argument had gone on longer than usual. March Mem. at 6–7. Thus we think it unlikely that the cardboard affected the jury's verdict, and Judge Moran's determination was certainly no abuse of discretion.

### C. Exclusion of Evidence

■ Artis testified that when he discovered that Glowacki and McDonnell had been recalled ahead of him he immediately complained to the union. In response, Clearing wished to present evidence that the union had investigated Artis' complaint and had not proceeded further. The company agreed that this evidence would be relevant only to its compliance with the collective bargaining agreement (and not to the claim of discrimination), but it wished to dispel any impression that the union found the grievance to have merit. Tr. 166–68. Plaintiff's counsel objected strongly, arguing that presentation of this evidence would raise an inference that Artis' complaint was groundless. Judge Moran noted that there are any number of reasons why a union would choose not to pursue an employee grievance. Tr. 168–69.

The judge compromised. He excluded the evidence but instructed the jury that Clearing had lived up to the terms of the collective bargaining agreement when it recalled lathe operators out of turn. Tr. 169–

71. The compromise eliminated the necessity for presenting a large amount of confusing and largely irrelevant testimony and met the company's stated concerns. The compromise appears entirely sensible and was certainly no abuse of discretion.

### VI.

■ Clearing argues that Artis failed to reasonably mitigate his damages by failing to take a job the company offered him as an assembler helper in February 1983. In its opening brief, however, Clearing pointed to no trial error to which its argument was relevant. Only in a footnote to Hitachi Zosen's reply brief, after Artis argued waiver, did the company deign to suggest to us that the error was in a jury instruction. Further, although it has referred us to counsel's objection at trial, Clearing has not provided us with the text of the disputed instruction or cited to it. Nor has it cited any relevant legal authority. All of these defects violate Fed.R.App.P. 28(a). Clearing has waived this argument. *See Holzman v. Jaymar–Ruby, Inc.*, 916 F.2d 1298, 1303 (7th Cir.1990); *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1253 n. 2 (7th Cir.1989).

■ In any event, a plaintiff's duty to mitigate his damages does not include an obligation to "go into another line of work, accept a demotion or take a demeaning position." *Ford Motor Co. v. EEOC*, 458 U.S. 219, 231, 102 S.Ct. 3057, 3065, 73 L.Ed.2d 721 (1982). The assembler helper position was clearly a demotion, which Artis was not required to accept.

### VII.

■ Clearing offers one last potential error. Artis, it claims, did not file his complaint within the 300–day limitation period imposed by Title VII. 42 U.S.C. § 2000e–5(e) (1988). The limitations period began, the parties agree, when Artis knew or had reason to know that Clearing discriminated against him. *Wislocki–Goin v. Mears*, 831 F.2d 1374, 1380 (7th Cir.1987), *cert. denied,* 485 U.S. 936, 108 S.Ct. 1113, 99 L.Ed.2d 274 (1988). Judge Moran found

that Artis had no reason to know that the company had discriminated against him until he went to the plant to pick up his tools in May 1984. We review this determination for clear error. *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511.

Clearing suggests that there were two prior points when Artis should have known he had been passed over. First, Artis was working as an assembler helper at the plant when Glowacki was recalled. What the company does not mention in its brief, however, is that Artis was working in a different building, and there is no evidence that he would have come through the machine shop during the course of his duties. In any event, Artis was laid off from the assembler helper position only five days after Glowacki was recalled, giving him little time in which to run into Glowacki.

Second, Clearing argues that Artis should have asked about recalls for lathe operators when he called the company's personnel office to turn down Clearing's offer to return to the assembler helper position. Underlying this argument is an assumption that Artis had a continuing duty to monitor employment practices in the machine shop after he was laid off. We reject the assumption. Plaintiffs in Title VII actions have no affirmative duty to investigate until they have "reason to know" that they should. Clearing can point to no reason that Artis should have suspected that it would not recall him. Indeed, the company's argument about the overall insufficiency of the evidence demonstrates that Artis had little reason to suspect that he would be discriminated against. As a matter of principle we are unwilling to say that laid-off workers should suspect that their erstwhile employers are plotting nefarious deeds.

Clearing's last argument along these lines is worth little discussion. It argues that Artis was lackadaisical when he did find out that Glowacki and McDonnell had been recalled. If the 300–day limit was equitably tolled, it argues, Artis should only have received the time necessary to file a complaint and no more. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446,

453 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991).

But *Cada* does not support this argument. *Cada* carefully elucidates the difference between the equitable tolling of a statute of limitations and the accrual of a cause of action. *Id.* at 450. Until he discovered the Title VII violation, Artis' cause of action did not accrue, and the limitations period simply did not start to run. *Id.* Artis was entitled to the full 300–day limitations period starting in May 1984.

## VIII.

For the foregoing reasons, the judgment of the district court is AFFIRMED in all respects.

MANION, *Circuit Judge*, dissenting.

Although I agree with the court's legal analysis and conclusions, I respectfully disagree with the factual analysis in part IV of the opinion and therefore dissent.

Initially, Artis made several claims against Clearing, including failure to train and retaliation. Both were dismissed, and Artis did not appeal. The issue before the jury narrowed to failure to recall from layoff. To succeed on this claim, under the indirect method of proof outlined in *McDonnell–Douglas*, Artis needed to show that Clearing's articulated "legitimate business purpose for choosing to bypass Artis" was a pretext, leaving only race as the "but for" cause of the bypass. (Op. at 1140.) Although *McKnight* required that the jury verdict be set aside, the trial court's reliance on the jury finding requires our *de novo* analysis of the evidence. (Op. at 1138–39.) It is from this evidentiary analysis that I must depart from the court's decision.

The central theme of the pretext finding rests on the fact that "Hale asked the three operators remaining on the job to do the work...." (Op. at 1136.) When they refused, Hale disregarded seniority and recalled two employees who had Poreba experience; Hale claimed he wanted to recall a

lathe operator with Poreba experience.[1] But, an expert testified that an operator could start work on the Poreba lathe with very little training. This apparent inconsistency of first offering the work to employees without Poreba experience and then insisting on recalling only those employees with Poreba experience apparently sets the stage for the pretext.

A reasonable juror could believe that, since further training is such a minor obstacle, disregarding seniority does not make much business sense. However, the law is that a company may not be punished for making a bad business decision, and in our JNOV review, we must ensure that the jury has not done so. *See Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559–60 (7th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987) ("No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, Title VII and § 1981 do not interfere."). The court stated, correctly, that a business justification may be so silly that a reasonable juror could believe it to be a pretext for discrimination. (Op. at 1140.) But, this is not a case like the court's "floppy hats" hypothetical.

It is undisputed that the three lathe operators without Poreba experience whom Clearing first asked to work on the Poreba lathe were already on the job and barely had enough work to keep them busy. It made economic sense to train one of them on the Poreba and have all three busy, thus avoiding having to recall another employee and pay another salary. This option having failed, the next step, and the logical

one, was to look for employees who had Poreba experience. In Clearing's judgment, this avoided the costs of training. Accordingly, Clearing recalled Glowacki and later McDonnell. Glowacki was fourth on the list, below Artis and two white employees. McDonnell was actually thirteenth on the layoff seniority list. (One person with Poreba experience who was higher on the list than McDonnell declined recall.) Thus, when McDonnell was recalled, Clearing skipped Artis *and eleven white employees.*

This business reason is not implausible. No matter how minimal the hindsight evidence at trial showed the cost of training Artis on the Poreba lathe to be, Clearing made a business judgment, at the time, about how to get the work on the Poreba lathe done at the lowest cost. This is not silliness on the level of floppy hats so that a reasonable juror could believe that the stated business reason was "bunkum." What is implausible is the court's conclusion that Clearing purposely "cooked up the Poreba experience criteria"—and skipped over eleven white employees—"in order to avoid rehiring Artis, solely because of the color of his skin." (Op. at 1140.)[2]

The court may be perplexed with Artis' testimony that in the twenty-four years with the company "he had never felt discriminated against." Nevertheless, that is what he said. The only explanation for this jury finding of discrimination is that it did not like Clearing's perceivably weak business reason for skipping over one black and eleven white employees. That may

1. The court notes, op. at 1139, that "Artis had a contractual right to be recalled first." Even if this was true, it only shows that Clearing violated the collective bargaining agreement; it does not support a finding that Clearing violated Title VII. In any case, we are not faced with a breach of the collective bargaining agreement. To the contrary, as the court points out, the trial court instructed the jury "that Clearing had lived up to the terms of the collective bargaining agreement when it recalled lathe operators out of turn." (Op. at 1143.) Thus, with breach of contract excluded, and retaliation and failure to train claims dismissed, only one question remained for jury consideration: Did Clearing not recall Artis because he had no Poreba experience? Or did that excuse cover up the real reason for its failure to recall Artis—because he was black?

2. Also without foundation is the court's speculation that the company may have wanted to recall younger and perhaps more flexible workers. (Op. at 1140–41.) Perhaps the two recalled employees showed more flexibility in the past by their willingness to learn the Poreba machine. If so, to recall them for the Poreba experience would be a legitimate business reason. If not, it was a breach of contract, but that was excised from the jury's consideration.

have been a breach of the collective bargaining agreement, and that may have been a poor business judgment; but when eleven whites are treated the same as one black, it is implausible to conclude that race was a determining factor in the company's recall decision. I would reverse the district court.