52 F.3d 329
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Cornelius WEATHERS, Plaintiff-Appellant,
v.
BETHLEHEM STEEL CORPORATION, Defendant-Appellee.
 No. 94-3158.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 15, 1995.
Decided April 20, 1995.
 
 Before WOOD, FLAUM and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 On May 6, 1993, Cornelius Weathers filed suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq. and 42 U.S.C. Sec. 1981, alleging that Bethlehem Steel Corporation ("Bethlehem") failed to employ him as a combustion craft technician on account of his race and that Bethlehem retaliated against him for filing a civil rights complaint with his union. Bethlehem moved for summary judgment; the district court granted the motion and the case was dismissed. Mr. Weathers appeals and we affirm.
 
 I.
 
 2
 Pursuant to the district court's Local Rule 56.1, Bethlehem filed a "Statement of Material Facts" in support of its motion for summary judgment. Rather than file a "Statement of Genuine Issues" to controvert Bethlehem's factual assertions, as required by Local Rule 56.1, Mr. Weathers instead filed an unsupported "Motion to Deny Defendant's Motion for Summary Judgment." After the district court struck this motion, Mr. Weathers sought, and was granted, three extensions of time to file a proper response to Bethlehem's summary judgment motion. The deadline established by the third extension was May 31, 1994. This date passed without Mr. Weathers filing a response. On June 2, 1994, Mr. Weathers moved for a fourth extension of time. The district court denied this motion, and Mr. Weathers filed two additional, unsuccessful motions for extensions of time. On June 22, 1994, the district court ruled that Mr. Weathers's dilatory conduct compelled it to find that he had waived the right to respond to Bethlehem's summary judgment motion. Therefore, per Local Rule 56.1, the district court assumed that the facts set forth in Bethlehem's Statement of Material Facts existed without controversy, to the extent that they were supported by the record.[1] Thereafter, on June 28, 1994, Mr. Weathers finally filed his response. Citing its June 22, 1994 Order, the district court struck the response. Then, acting on the basis of the undisputed facts set forth by Bethlehem, the district court granted Bethlehem's motion for summary judgment.
 
 
 3
 The relevant facts giving rise to this litigation, as set forth in Bethlehem's motion for summary judgment and supported by the record, are as follows. In March 1989, Mr. Weathers, an African American, submitted an application for employment at Bethlehem as a combustion craft technician. At this time, Mr. Weathers understood that he would have to receive a passing score on a qualifying exam before he was eligible for the position. Mr. Weathers took and failed the qualifying exam twice before finally passing it on July 24, 1989. Pursuant to Bethlehem's application policy, applications remain active for only six months from the date that the application is initially submitted, regardless of when the applicant passes the qualifying exam. After six months, the application becomes inactive and the applicant must submit a new application at a time when Bethlehem is seeking applicants in order to be considered for future openings. Passing test scores, however, are valid indefinitely and an applicant is not required to retake the qualifying exam unless Bethlehem implements a new examination.
 
 
 4
 On July 19 and 20, 1989, Bethlehem made offers of employment to two white applicants, Messrs. Pfauth and Powers. These individuals had already passed the qualifying exam by this date and were thus eligible for immediate employment. As Mr. Weathers did not pass the exam until July 24, 1989, he was ineligible for employment at this time. Unfortunately for Mr. Weathers, these two hires satisfied Bethlehem's combustion craft technician requirements for the balance of the period during which his application remained active--until mid-September 1989. The applications of at least five white individuals expired in this same manner during this general time frame.
 
 
 5
 In August 1990, nearly a year after Mr. Weathers's application had expired, Bethlehem hired another white individual, Mr. McIntosh, as a combustion craft technician. Mr. McIntosh had previously been employed at Bethlehem and had already passed a qualifying exam. Since the time of Mr. McIntosh's employment, however, Bethlehem had revised the qualifying exam. Mr. McIntosh was thus required to take and pass the new exam before he was eligible for the 1990 position. Then, on April 1, 1991, Bethlehem again implemented a new qualifying exam for the combustion craft technician position. Everyone seeking a combustion craft technician position from this date forward was required to take the new exam, regardless of whether they had passed an older version of the exam, unless they were already employed by Bethlehem in that position.
 
 
 6
 Mr. Weathers later applied for a position as a general laborer at Bethlehem and he was hired in that regard in October 1991. Thereafter, in early 1992, Bethlehem posted a vacancy for a combustion craft technician position. Mr. Weathers filed a new application for the position and learned at that time that he had to take the new qualifying exam. Mr. Weathers then took and failed the new exam in February 1992. Mr. Weathers did not attempt to retake the exam after that date.
 
 
 7
 In August 1992, Mr. Weathers submitted a civil rights complaint with his union. Then, on October 20, 1992, Mr. Weathers filed a charge of race discrimination with the EEOC. Three months later, Mr. Weathers attempted to amend this charge to add a claim for retaliation. On May 6, 1993, after he had learned that the EEOC would not pursue his claim, Mr. Weathers filed this suit in the district court.
 
 
 8
 On appeal, Mr. Weathers primarily raises the following contentions: (1) the district court abused its discretion when it refused to grant his last three requests for extensions of time and also when it subsequently refused to consider his Memorandum in Opposition to Defendant's Motion for Summary Judgment; and (2) the district court erroneously granted Bethlehem's motion for summary judgment. Bethlehem, on the other hand, argues that Mr. Weathers's appeal is frivolous and that it should accordingly be awarded the costs and attorneys fees it incurred in the defense of this appeal.
 
 II.
 
 9
 We will uphold a district court's strict enforcement of its local rules, and reverse only where it is evident that the district court has abused its discretion. Wienco, Inc. v. Katahn Assocs., Inc., 965 F.2d 565, 567-68 (7th Cir.1992) (reviewing the application of the Rules of the United States District Court for the Northern District of Illinois). We review a grant of summary judgment by considering all factual issues in the light most favorable to the nonmoving party (herein Mr. Weathers) and determining de novo whether there exists any genuine issue of material fact requiring submission of the case to the finder of fact or whether judgment as a matter of law was appropriate. Fed.R.Civ.P. 56(c); Colburn v. Trustees of Indiana Univ., 973 F.2d 581, 585 (7th Cir.1992). Moreover, "[t]his standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir.1993) (citations omitted).
 
 A.
 
 10
 Mr. Weathers argues that the district court abused its discretion by denying his fourth, fifth, and sixth motions for extensions of time and by subsequently refusing to consider his response to Bethlehem's summary judgment motion. Our review of this matter convinces us that the district court did not abuse its discretion in regard to any of these decisions.
 
 
 11
 After the district court had granted Mr. Weathers's third motion for an extension of time, a response to Bethlehem's summary judgment motion was due on May 31, 1994. Mr. Weathers missed that deadline and, instead, filed a fourth motion for an extension of time on June 2, 1994--requesting an additional five days. This motion was not granted, and the five days came and went. Then, on June 10, 1994, Mr. Weathers requested another extension--to and including June 10, 1994. The motion was not granted, and the remainder of June 10 passed without any further word from Mr. Weathers. Finally, on June 16, 1994, Mr. Weathers moved for his sixth and last extension of time--to and including June 21, 1994. This motion was not granted, and June 21 likewise passed without a response from Mr. Weathers. We find that the district court did not abuse its discretion in refusing to grant Mr. Weathers's last three motions for extensions of time. The district court had already granted three extensions and, furthermore, every one of these last three motions was filed later than the filing date requested in each preceding motion.
 
 
 12
 On June 28, 1994, Mr. Weathers did finally file a response to Bethlehem's motion for summary judgment. A week beforehand, however, the district court had announced in an order that it would no longer consider any response filed by Mr. Weathers in light of his "extraordinarily dilatory conduct." The district court, in an order dated August 18, 1994, accordingly decided Bethlehem's motion for summary judgment without reference to Mr. Weathers's response. We note that Local Rule 7.1(a) clearly states that the "[f]ailure to file an answer brief or reply brief within the time prescribed may subject the motion to summary ruling." Moreover, Local Rule 56.1 states that, in the context of deciding a summary judgment motion, "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion." Despite the plain language of the local rules, Mr. Weathers requests that we require the district court to consider his nearly month-late response to Bethlehem's summary judgment motion.
 
 
 13
 We have previously held that "[t]he district court's interpretation of its own rules is, of course, due considerable deference from us." Waldridge v. American Hoechst Corp., 24 F.3d 918, 923 n. 4 (7th Cir.1994) (citations omitted). Furthermore, the decision whether to enforce a local rule leniently or strictly is within the discretion of the district court. Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir.1992) (addressing the application of Rule 12(n) of the Rules of the District Court for the Northern District of Illinois--a rule similar to Local Rule 56.1). Mr. Weathers makes much of the fact that almost two months passed between the date when he submitted his late response and the date when the district court granted Bethlehem's motion for summary judgment. That the district court could have feasibly considered Mr. Weathers's response in this instance is irrelevant to the issue of whether that court abused its discretion where the record so clearly demonstrates Mr. Weathers's violation of the local rules.
 
 
 14
 Our review of the course of Mr. Weathers's conduct in the proceedings below convinces us that the district court did not abuse its discretion in the interpretation and application of its local rules in this case.
 
 B.
 
 15
 Mr. Weathers also argues that the district court erroneously granted Bethlehem's motion for summary judgment--in regard to both his racial discrimination claim and his retaliation claim. Turning first to Mr. Weathers's racial discrimination claim, we note initially that Title VII and 42 U.S.C. Sec. 1981 require the same methods of proof. E.g., Hong v. Children's Memorial Hosp., 993 F.2d 1257, 1266 n. 7 (7th Cir.1993), cert. denied, 114 S.Ct. 1372 (1994). Mr. Weathers's ultimate burden here is to prove that his race was a dispositive factor in Bethlehem's decision to not hire him. E.g., Artis v. Hitachi Zosen Clearing, Inc., 967 F.2d 1132, 1139 (7th Cir.1992) (citations omitted).
 
 
 16
 Where, as here, there is no direct evidence of discrimination, Mr. Weathers must proceed under the indirect, burden-shifting method of proof first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). At the first stage of this method, the burden rests upon the plaintiff to establish the four elements of a prima facie case of race discrimination. Once the plaintiff has established a prima facie case, a rebuttable presumption of discrimination is thereby created and the burden of production shifts to the employer to offer a legitimate and nondiscriminatory reason for not hiring the plaintiff.
 
 
 17
 To establish his prima facie case, Mr. Weathers must show:
 
 
 18
 (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.
 
 
 19
 McDonnell Douglas, 411 U.S. at 802 (footnote omitted). The district court found that Mr. Weathers had failed to establish a prima facie case of employment discrimination in this case because Bethlehem did not seek to hire any combustion craft technicians during that period when Mr. Weathers both had an active application pending and was qualified for the position.
 
 
 20
 As discussed above, the relevant facts[2] are as follows: Mr. Weathers first applied for a position as a combustion craft technician in March 1989. Under Bethlehem's six-month expiration policy, Mr. Weathers's application expired sometime in September 1989. Bethlehem did make two offers of employment to white individuals during this period--on July 19 and 20, 1989. Mr. Weathers, however, did not pass the qualifying exam until July 24, 1989. Bethlehem did not hire any other combustion craft technicians until August 1990. Thus, during the period when Mr. Weathers's application was valid and he was qualified, Bethlehem did not seek to hire anyone. Mr. Weathers next applied for a position as a combustion craft technician in January 1992. Bethlehem was seeking to fill a position at this time, but a new qualifying exam had since been implemented. Mr. Weathers took the new exam, but he did not pass it. Thus, at no time was Mr. Weathers qualified to fill the position on this second occasion.
 
 
 21
 Viewing these facts in the light most favorable to Mr. Weathers, we agree with the district court's conclusion that Mr. Weathers has failed to establish his prima facie case of race discrimination. In light of this conclusion, we need not discuss whether Mr. Weathers has succeeded in demonstrating that the reasons proffered by Bethlehem for not hiring him are a pretext.
 
 
 22
 Mr. Weathers also argues that the district court erred in granting Bethlehem's motion for summary judgment regarding his retaliation claim. To establish a prima facie case of retaliation under Title VII, Mr. Weathers must show that " '(1) [ ]he engaged in statutorily protected expression; (2) [ ]he suffered an adverse action by [his] employer; and (3) there is a causal link between the protected expression and the adverse action.' " Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1457 (7th Cir.1994) (quoting Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1313 (7th Cir.1989) (other citations omitted)). Mr. Weathers claims that Bethlehem retaliated against him by deciding to not hire him as a combustion craft technician after he filed a civil rights complaint with his union in August 1992.
 
 
 23
 It is true that filing a civil rights complaint with one's union is a protected activity, and that not being hired as a combustion craft technician is an "adverse action," but we agree with the district court's finding that Mr. Weathers has failed to produce any evidence of a causal link between the two. As detailed above, there were two occasions when Mr. Weathers unsuccessfully applied for a position as a combustion craft technician--in 1992 and 1989. Bethlehem did not hire Mr. Weathers as a combustion craft technician in 1992 because he failed the new qualifying exam that he was required to take. A causal link is also lacking between the union complaint and Bethlehem's failure to hire Mr. Weathers in 1989: We refuse to find that Bethlehem did not hire Mr. Weathers in 1989 in retaliation for a complaint he would eventually file three years later regarding Bethlehem's failure to have hired him at that time. Viewing the facts in the light most favorable to Mr. Weathers, we conclude that the district court did not err in granting Bethlehem's motion for summary judgment regarding Mr. Weathers's retaliation charge.
 
 C.
 
 24
 Bethlehem argues that this appeal by Mr. Weathers is frivolous and that an award to cover its costs and attorneys fees is therefore justified. While we feel that all of the decisions reached by the district court were proper, we nonetheless do not find this appeal to be sufficiently frivolous to grant Bethlehem's request. Bethlehem's argument for an award of costs and attorneys fees is accordingly rejected.
 
 
 25
 We have also reviewed the other arguments raised in this appeal and we find them to be without merit.
 
 III.
 
 26
 For all of the foregoing reasons, the decision of the lower court granting summary judgment in favor of the defendant is affirmed.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Local Rule 56.1 states, in pertinent part:
 In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.
 
 
 [2]
 Pursuant to Local Rule 56.1, these facts are taken from Bethlehem's Statement of Material Facts. Before these factual claims may be assumed to exist without controversy, however, Local Rule 56.1 requires that the claims be "supported by admissible evidence." Mr. Weathers argues that the deposition testimony of Thomas Kovalcik--Bethlehem's Personnel Coordinator--is inadmissible and thus insufficient to support the existence of Bethlehem's policy of considering applications to be inactive after six months and Bethlehem's policy requiring applicants to retake the qualifying exam when a new exam is implemented. We review the district court's decision to rely upon the deposition of Mr. Kovalcik for an abuse of discretion. Zayre Corp. v. S.M. & R. Co., Inc., 882 F.2d 1145, 1149-50 (7th Cir.1989) (citation omitted). As Bethlehem's Personnel Coordinator, Mr. Kovalcik possessed personal knowledge regarding Bethlehem's employment practices; he was thus competent to testify regarding those policies. Moreover, Mr. Weathers did not properly raise his objections to the admissibility of Mr. Kovalcik's deposition in the proceedings below. Mr. Weathers elected to not file a motion to strike Mr. Kovalcik's deposition; instead Mr. Weathers waited until he filed his overdue response to Bethlehem's summary judgment motion to raise this issue. As discussed above, the district court properly refused to consider this response. Since this objection was not properly raised, we find that Mr. Weathers has waived it. See id. at 1150 ("An evidentiary objection not raised in the district court is waived on appeal, Fed.R.Evid. 103(a)(1); and this rule holds as true for a summary judgment proceeding as it does for a trial.") (citations omitted). We therefore find that the district court did not abuse its discretion when it concluded that Mr. Kovalcik's deposition supported Bethlehem's factual claims regarding its employment policies