Dr. Gerald KAPLAN and Clara L. Kaplan, his wife, Plaintiffs,

v.

442 WELLINGTON COOPERATIVE BUILDING CORPORATION, et al., Defendants.

No. 81 C 2590.

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1983.

Laser, Schostok, Kolman & Frank, Chicago, Ill., for plaintiff.

Thomas R. Mulroy, Jr., Jenner & Block, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PARSONS, Senior District Judge.

The defendants have moved for summary judgment. The court concludes that at this stage of the case and considering all of the evidence that has been made available, including that bearing upon the issue of the intent of the defendants, this case can be ruled upon as a matter of law. Summary judgment will be both practical and time saving. It should be granted.

Defendants are the 442 Wellington Cooperative Building Corporation, title holder to a luxury condominium apartment building, and its officers and directors, most if not all of whom, of course, live in the building. The defendants are accused by the plaintiffs, a Dr. Gerald Kaplan and his wife, Clara L. Kaplan, of discriminating against them in violation of 42 U.S.C. §§ 1982 and 3604, by refusing to permit the sale to them after they had made a bona fide offer to buy it, one of the residential condominium units in the building, because of the fact that plaintiff Clara Kaplan is an Hispanic citizen of the United States whose place of national origin was Cuba. Jurisdiction is based on 28 U.S.C. § 1343(4); 42 U.S.C. § 3612; 42 U.S.C. § 3604; and 42 U.S.C. § 1982.

In aid of clarity in the ensuing analysis, the pertinent provisions of the substantive statutes should be reviewed. It should be noted that Section 1982 is one of the numerous provisions of the original Civil Rights Act of 1866, enacted by Congress in its effort to extend to the newly freed slaves the full mantle of citizenship which it then considered was available to free white citizens. It first was enacted at a time when there had been no constitutionally determined federal citizenship. From the time of the adoption of the Constitution, American citizenship had been left to the states, and Congress thought in 1866 that it could confer equality of citizenship by statute alone. It became necessary, however, two years later, in 1868, for Congress and the states to adopt the Fourteenth Amendment, creating for the first time a constitutionally declared national citizenship. In its original form, Section One of the Civil Rights Act of 1866 attempted by its first words to create, by federal statute, a national citizenship. Section One provided: "that all

persons born in the United States not subject to any foreign power ... are hereby declared to be citizens of the United States." The provision of this enactment applicable to the instant case, Section 1982, as recited originally as part of Section 1 of the Act of 1866, and repeated in Section 16 of the Act of 1870, provided that:

> *All citizens* of the United States shall have the same right, in every State and Territory, *as is enjoyed by white citizens* thereof to inherit, purchase, lease, sell, hold, and convey real and personal property. (Emphasis added).

In the interim the Fourteenth Amendment was adopted creating a federally declared American citizenship. More than one hundred years later, the Fair Housing Act of 1968, Section 3604 of Title 42, made specific these guarantees to other than non-white persons when it mandated in pertinent part that:

> [I]t shall be unlawful ... (a) [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of *race, color, religion, sex,* or *national origin.* (Emphasis added).

Plaintiffs allege in substance in their complaint that on November 12, 1980, they entered into a contract for the purchase of the stock and of the leasehold of a cooperative apartment in the residential building managed by the 442 Wellington Cooperative Building Corporation as its principal concern. Pursuant to the proprietary lease of the condominium to be purchased, the Kaplans were obligated to obtain the approval of the Board of Directors of the cooperative building corporation. The Kaplans assert that the directors of the corporation intentionally rejected their application for the acquisition of the apartment because Clara Kaplan, an American citizen but an Hispanic, was from Cuba. If this is true, what they complained of was a word

for word violation of 42 U.S.C. § 3604. The plaintiffs further alleged that at the time of this denial the cooperative unit was available for purchase and that they were ready, willing and able to complete the transaction. If this were true, and if Mrs. Kaplan is *non-white,* it is a literal violation of Section 1982. Plaintiffs at this time have not asserted that Clara L. Kaplan is a non-white; but if for this motion we assume, without deciding and subject to further proof, that she would be considered non-white, then plaintiffs would come within the specific protection of Section 1982.[1]

In order to justify a summary judgment, the movant is required to show "the absence of a genuine issue as to any material fact, and for these purposes the material [the movant] lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). It should be noted that this burden is especially heavy when intent and motivation play a major role in the claims presented. *Poller v. C.B.S., Inc.,* 368 U.S. 464, 472–73, 83 S.Ct. 486, 490–91, 7 L.Ed.2d 458 (1962); *Illinois Employees Union, Council 34 v. Lewis,* 473 F.2d 561, 565–66 (7th Cir. 1972) *cert. denied,* 410 U.S. 928, 93 S.Ct. 1364, 35 L.Ed.2d 580 (1973).

The defendants having contravened the complaint, have attached to their motion for summary judgment certain affidavits and portions of certain depositions. These evidentiary exhibits are offered in order to establish that the decision of the directors of the corporation was not influenced or affected by the fact that Clara Kaplan is Hispanic and comes from Cuba, but rather that their decision rested on other and entirely different considerations. Plaintiffs in turn have presented no clear counter-evidence, although they staunchly assert in their own depositions and counter-affidavits that their belief is that they were refused the condominium unit because of Clara Ka-

---

1. It should be noted that generally under Section 1982, it would not be enough for the plaintiff to merely prove that Clara Kaplan is hispanic or was from Cuba. Rather, the claimants should make a convincing showing, either before or at trial, that she is in fact a non-white. It is well known that Cubans include persons of various races and colors.

plan's national origin or race. Of course this is not an unusual assumption in which a member of a minority indulges him or herself when something is withheld by members of a majority. This case calls into play the role of a Rule 56 motion.

■ The last two sentences of Rule 56(e) should be repeated here:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.* (Emphasis added).

Rule 56 thus establishes how a motion for summary judgment once made may be supported and when and with what it must be supported. *Affidavits* made on personal knowledge, *sworn or certified* copies of papers or parts of papers, *depositions, answers to interrogatories,* and *further affidavits* are specifically recited. For, as the Notes of the Advisory Committee on Rules state, "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

In this case the parties have exhausted the sources of information and have presented to me as attachments to their briefs for and against summary judgment all evidence that reasonably could be considered available for presentation to a jury were the case to go to trial. Even the cross examinations of the principals has been handled by depositions. Under these circumstances I should summarily decide the case.[2]

■ Again, it should be noted that this case was brought under both 42 U.S.C. § 1982 and 42 U.S.C. § 3604. The Supreme Court in its recent decision in *General Building Contractors Association, Inc. v. Pennsylvania,* —— U.S. ——, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) implied that henceforth in Section 1982 cases there must be proof of discriminatory intent or purpose to sustain an action. This requirement has not yet been extended to a 3604 case under the Fair Housing Act. Under Section 3604, the cases have long held generally that an action such as that of the defendants here, which might have a discriminatory effect, is prohibited unless reasons for the action taken are established showing that the action taken was totally unrelated to the race or nationality of the plaintiffs. The allowable reason must have been arrived at in good faith. Evidence of it must be devoid of circumstances from which it can be inferred that there was a real though subtle purpose of discrimination. *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir.1977).

It has been stated on a number of occasions that in 3604 claims, rejection of interracial real estate deals by white sellers is all that need be shown to make out a prima facie case, and the Seventh Circuit has confirmed this position in *Moore v. Townsend,* 525 F.2d 482, 485 (1975), when it stated that "[r]ace is an impermissible consideration in a real estate transaction, and it need only be established that race played some part in the refusal to deal." This stands for the proposition that all the plaintiff in a 3604 action need do is show that he belongs to a "minority", as listed by the statute, that the defendant was aware of it, that plaintiff was ready and able to accept defendant's offering of the property for sale but that the defendant refused to deal with him; wherefore this alone sets up a prima facie case which the defendant cannot knock down without proof that he acted without any discriminatory intent. This is what *Moore v. Townsend* says, but it says a great

---

2. It should be noted that since filing their appendix to their supplemental memorandum in opposition to defendants' motion for summary judgment, the plaintiffs have not sought a continuance under subsection (f) in order to have more time to obtain additional affidavits or take additional depositions. To the extent that evidence objected to is considered by the court, motions to strike are to be considered overruled.

deal more when you consider the facts of that case, and in particular the facts the plaintiffs therein established before the defendants sought to escape with some affirmative defense. The key language is the phrase "that race played some part in the refusal to deal." This statement levels out into these words: "Race was a motivating consideration in the decision to refuse." In this context the decision to refuse must rest in some part, be it ever so small, upon considerations of race. But there are conceivably many situations in which the seller and the buyer are of different ethnic identities, with which differences both parties are aware, and in which situation a non-discriminatory decision is made not to go through with the sale. Yet while racial differences could have been among those considerations which led to the decision not to deal, the facts about it could have been insufficient to place a burden on a defendant to prove the negative of what otherwise was a mere supposition. In those cases one must remember that "to play some part in a refusal" means just that: to actually contribute in some degree to the sellers arriving at their decision. This the plaintiff must show, and though in some cases it is an elusive thing to show, it must be shown to some degree before the defendant's motives may be said as a matter of law to have been illegal.

We have here a somewhat similar situation. Here, after the production of all available evidence, it still has not been shown that defendant's knowledge of plaintiff's ethnic differences contributed in any degree to the decision not to sell. Further it has been shown that considerations concerning Dr. Kaplan's practice of medicine and his conduct regarding investments decidedly were the real concern of the majority of the members of the board.

The evidence presented by the parties in support of their positions on the issue of purposeful racial discrimination must be summarized. At the outset, the evidence is that in accordance with the defendants' usual procedure, the application was forwarded to a professional research firm. This firm came up with certain information

about medicine practice, including damaging newspaper articles, about an aborted investment matter and about poor reports from prior co-tenants, which became almost exclusively the subject matter of the board's deliberations.

In support of their motion for summary judgment each defendant director submitted a sworn affidavit stating that his vote on the plaintiffs' application "was in no way influenced or affected" by Mrs. Kaplan's ethnic origin. The plaintiffs did not attempt to counter this evidence directly and relied solely on their claim that they need not prove intent under Section 3604. Plaintiffs did, however, submit the depositions of Mr. and Mrs. Kaplan which established that Mrs. Kaplan was of Hispanic origin, that the Kaplans entered into a contract to purchase a unit of the condominium, that they were at all times financially capable of purchasing the property, and further that their application was denied.

Supplemental memoranda on the instant motion for summary judgment, with attached exhibits, also were filed by the parties after depositions were finished. These pleadings contain the bulk of the evidence presented to the court regarding the issue of the defendants' intent. In depositions attached to their supplemental memorandum, the defendants submitted evidence showing that the directors of 442 Wellington decided that the Kaplans did not possess the qualities and character they sought as residents. The depositions reveal that of the eight directors considering the Kaplans' application, six of them voted not to approve it. All of the six who voted not to approve the application testified that they did so because of negative information they had received relating to prior unbecoming business dealings that Kaplan and his attorney had with a Mr. Metzger, who himself was a director of the 442 Wellington Cooperative Building Corporation at the time the application was being considered. Four of those who voted not to approve the application also cited that Dr. Kaplan's being a publicized leading recipient of medicaid payments to doctors in Illinois

58

in 1974 and in 1975, caused them to vote negatively on the application. Three of the non-approving directors agreed that negative information on the Kaplans as tenants in their prior dwelling influenced their decisions and three of them stated in their depositions that they reacted negatively to the Kaplans' personalities. Two of the directors who voted to reject the Kaplans' application testified that they also were concerned with the relationship of Dr. Kaplan's attorney to the plaintiffs. Two of them cited the Kaplans alleged involvement in other suits at law as a negative factor in their determination.

Even the two directors who voted in favor of the Kaplans application submitted in their depositions that as far as they could recall the real reason the application was not approved was because of the negative conclusions drawn by the other directors from Mr. Kaplan's aborted business deal with Mr. Metzger. One of these two directors also cited the concerns of the board regarding medicaid payments to Dr. Kaplan as influencing the decision.

The plaintiffs responded and attached affidavits and documents to their supplemental memorandum and also appended deposition excerpts to it. These materials established the additional facts that Clara Kaplan "originated from" Cuba, and that this fact was communicated to members of the 442 Wellington board prior to their voting on the Kaplans' admission to the building. These materials also established that prior to the filing of this lawsuit, the board never communicated to the Kaplans the reason for their rejection and the apartment the Kaplans had contracted for was still available for sale after the Kaplans were rejected. The plaintiffs established further that there has never been a shareholder of the 442 Wellington Building who was black or Hispanic. Beyond this, these exhibits merely reiterate the belief, and the feeling of Dr. and Mrs. Kaplan, that their rejection had to have resulted from her having come from Cuba.

The preliminary issue presented, is whether at this juncture we are to accept as sufficient the defendants' factually unchallenged and uncontravened statements that their denial of the application of the Kaplans was based on considerations totally unrelated to racial or national animus. If we are, then summary judgment is appropriate since higher federal courts recently have required that there must be some positive showing of purposeful or intentional discrimination for claims of plaintiffs to succeed under 42 U.S.C. § 1982, and even in a prima facie showing under 42 U.S.C. § 3604 something more than discriminatory effect must be shown. *See Phillips v. Hunter Trails Community Assoc.*, 685 F.2d 184, at 187, 190 (7th Cir.1982). The evidence of circumstances must lead the reasonable mind to the "suggestion" that discrimination was intended. Id. at 190. And in *General Building Contractors Association v. Pennsylvania,* —— U.S. ——, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), cited to the court herein by defendants in a letter by their counsel to the court (copy to opposing counsel), the Supreme Court held that liability may not be imposed under § 1981, the "companion" provision of § 1982, without proof of intentional discrimination. Some of its words are important here.

> We have held [heretofore with cases cited] that both § 1981 and § 1982 "prohibit all racial discrimination, whether or not under color of law ..." Nevertheless, the fact that the prohibitions of § 1981 encompass private as well as governmental action does not suggest that the statute reaches more than purposeful discrimination, whether public or private.
>
> ... The supporters of the bill repeatedly emphasized that the legislation was designed to eradicate blatant deprivations of civil rights, clearly fashioned with the purpose of oppressing the former slaves.
>
> ....
>
> We conclude, therefore, that § 1981 ... can be violated only by purposeful discrimination.

*Id.* at 3148–3150.

The dissent of Justices Marshall and Brennan, in decrying the position taken by

the majority as "naive", used words which bear pointedly upon a decision about the nature of proof of intent in a 1982 case, though they were, as viewed here for the purposes of summary judgment, not directed toward this issue. They stated that "flagrant examples of intentional discrimination still exist, [and] . . . more often occur 'on a more sophisticated and subtle level,' the effects of which are often as cruel and 'devastating as the most crude form of discrimination.' " *Id.* at 3161.

If there is any factual question recognized by the law, no matter how elusive it may be, as to the legal propriety of the defendants' motive or intent, then there remains an issue of fact and the plaintiffs' cause of action would survive the defendants' motion for summary judgment.

Viewing the evidence in the light most favorable to the plaintiffs, as I am required to do, there definitely does not exist a genuine issue regarding the motive of the defendants. Although the law must be especially wary of dismissing claims of discriminatory intent, racial or class, which are asserted under statutes designed to ferret out and eliminate deeply embedded but un-American social attitudes that give birth to purposeful discrimination, here, the assertions of the defendants in their exhibits left factually unchallenged by all that the plaintiffs have offered is fully sufficient to support their motion for summary judgment. The plaintiffs have not produced one shred of evidence that would lead a reasonable mind to the proposition that discrimination based on race or national origin was ever intended.

A 3604 case is never to be made out on the mere suspicion that because the plaintiff's minority status is known to the defendant, the defendant's action rejecting the plaintiff necessarily resulted at least in part from some pre-existing bias. It was not the intent of Congress either in 1866 or in 1964 to give any factual weight whatsoever to mere suspicions. Suspicions in this area of interplay among the peoples of a pluralistic society are understandable reactions of numbers of minorities, but in cases like these the court should proceed no further when it finds as here that the complainants' charges rest on nothing more.

Wherefore, and in view of all of the foregoing, the defendants' motion for summary judgment must be and the same is hereby granted. It is so ordered.