Louciene WATSON and Cora L. Watson, Plaintiffs,

v.

PATHWAY FINANCIAL and First Western Mortgage Company, Defendants.

No. 87 C 1001.

United States District Court, N.D. Illinois, E.D.

Dec. 8, 1988.

Louciene Watson, Chicago, Ill., pro se.

Edward A. Voci, Michael Kalven, Chicago, Ill., for Cora L. Watson.

Michael Dockterman, Robert S. Solomon, David A. Kanter, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

This is a civil rights action brought pursuant to the Civil Rights Act of 1968, 42 U.S.C. Sections 3601, *et seq.* (the "Fair Housing Act"), and the Civil Rights Act of 1966, 42 U.S.C. Section 1981. Plaintiffs Louciene and Cora Watson ("Watsons") are black citizens of the United States. The Watsons charge that defendant First Western Mortgage Corporation ("First Western") discriminated against the Watsons in denying their application for a residential loan. Now before the court is First Western's motion for summary judgment. The court grants defendant's motion as to the Section 1981 claim and denies the motion as to the Fair Housing Act claim.

I. Background

The following facts appear to be undisputed unless otherwise noted. On June 24, 1986, the Watsons submitted a residential

loan application to Pathway Financial, an 80% owner of First Western, to secure a mortgage for residential property they had contracted to purchase. On the application, the Watsons revealed that they are black. Pathway Financial thereafter forwarded the application to First Western for processing.

First Western requested a credit check on the Watsons from an outside source called CrediTek Systems, Inc. The CrediTek report indicated that the Watsons had not defaulted on any of their numerous credit accounts, but had made several late payments to some of the creditors. Nonetheless, all of the Watsons' creditors gave them "1" ratings.[1]

CrediTek sent the Watsons a Consumer Explanation Letter reporting six accounts with late payments, asking the Watsons to explain why the payments were late. Mr. Watson had several telephone conversations with Ms. Cynthia Foltman ("Foltman"), a loan coordinator employed by First Western. In one such conversation, Foltman told Mr. Watson that his explanations for late payments set forth in the Consumer Explanation Letter were inadequate. Thereafter, Mr. Watson sent a letter to Foltman. In the letter, Mr. Watson explained that there had been some delay in paying bills because he had been transferred to Seattle, Washington and had been forced to maintain two households. Further, Mr. Watson explained that when he returned to Chicago, he purchased a new residence and was paying two mortgages for a couple of months.

First Western also completed a Conventional Income/Expense Evaluation as part of the Watsons' application. The evaluation shows that both the Watsons' monthly housing expense to income ratio and their Conventional Income/Expense Evaluation are within First Western's underwriting guidelines. *See* Final Pretrial Order Statement of Uncontested Facts, ¶¶ 30, 31, 32, 33. *But see* Final Pretrial Order Agreed Statement of Contested Facts, ¶¶ 3, 4. The

loan to value ratio for the loan the Watsons were requesting was 80%.

In August, 1986, First Western rejected the Watsons' application. In its Statement of Credit Denial, First Western indicated that the Watsons' application was rejected on the basis of the information received from CrediTek and information obtained from an outside source other than a consumer reporting agency. After several written requests to uncover the nature of the additional information, First Western responded that it had in fact not relied on any outside information other than the CrediTek report. First Western stated that the overall credit history contained in the report was the only reason for the denial.

The Watsons subsequently procured a loan from another lender. They were unable to purchase the residential property they had originally contracted for because the mortgage financing was not available in time. The Watsons purchased a different property with the loan proceeds.

## II. Analysis

 The Watsons' claims are grounded in 42 U.S.C. Section 1981, which provides a cause of action for racial discrimination primarily when such discrimination occurs in the making and/or enforcement of contracts, and 42 U.S.C. Section 3605, which prohibits discrimination in financing of housing. An important distinction between the two provisions is that to prove a violation of the Fair Housing Act, plaintiffs need not prove an actual intent to discriminate on the part of defendants. *Thomas v. First Federal Sav. Bank of Indiana*, 653 F.Supp. 1330, 1338 (N.D.Ind.1987). In contrast, under Section 1981, plaintiffs must prove intentional discrimination on the part of defendants. *Id.* at 1342. Even under a Fair Housing Act claim, plaintiffs must show that race played some role in the defendant's decision. *Kaplan v. 442 Wellington Co-op. Bldg. Corp.*, 567 F.Supp. 53, 52 (N.D.Ill.1983).

Defendant moves for summary judgment, arguing that plaintiffs have offered

---

1. The credit reporting system used by CrediTek goes from "1" to "10" with "1" being the best and "10" being the worst. Final Pretrial Order, Statement of Uncontested Facts, ¶ 21.

no evidence to establish an essential element of plaintiffs' case—that race played *any* role in defendant's denial of a home mortgage. Thus, defendant argues that plaintiffs' claims fail under both statutes.

According to the Supreme Court:

[t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

■ The Watsons have presented virtually no evidence of an *actual intent* to discriminate against them on account of their race. Because plaintiffs fail in this essential element of a Section 1981 claim, the court grants the defendant's summary judgment motion as to the Section 1981 claim.

■ The Fair Housing Act claim presents a more difficult question. To establish a *prima facie* case of racial discrimination under Fair Housing Act Section 3605, plaintiffs must prove:

(1) that they were members of a protected class; (2) that they applied and were qualified for a loan from defendant; (3) that the loan was rejected despite their qualifications; and (4) that defendant

continued to approve loans for applicants with qualifications similar to plaintiffs. *Thomas v. First Federal Sav. Bank of Indiana, supra,* 653 F.Supp. at 1338. Although this equation taken literally does not require any evidence of racial animus, courts have required that race have contributed in some degree to the defendant's decision. *Kaplan v. 442 Wellington Co-op Bldg. Corp., supra,* 567 F.Supp. at 57. Once the plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate non-racial reasons for its actions. *Phillips v. Hunter Trails Community Ass'n,* 685 F.2d 184, 190 (7th Cir. 1982).

The Watsons have presented evidence on each of the essential elements of their *prima facie* case. Elements 1 and 3 are undisputed—the Watsons are black and their application was rejected. Element 2 is disputed but the Watsons have presented evidence that they were qualified for the loan. The Watsons' Conventional Income/Expense Evaluation was within First Western's guidelines. Although the Watsons have a history of late payments on credit cards, the Watsons present evidence that other applicants with late payments did receive loans from First Western.[2] This evidence is also applicable to Element 4 which requires plaintiffs to establish that others with similar qualifications received loans.

The defendant articulates a business reason for not funding the loan. Defendant has consistently stated that the Watsons' application was rejected because of the late payments and an inadequate explanation therefor. Defendant presents the affidavits of two of the loan consultants at First Western who testify that the decision to

2. Plaintiffs attached to their response to the summary judgment motion numerous documents purporting to be loan files from First Western. Defendant moved to strike these exhibits, as exhibits must be identified by affidavit or otherwise made admissible in evidence to be considered by the court on a summary judgment motion. *Martz v. Union Labor Fire Insurance Co.,* 757 F.2d 135, 138 (7th Cir.1985). Plaintiff's counsel later filed an affidavit attesting to the validity of the documents. The court

does not want to reward careless practices by plaintiff's counsel and does not rely on the plaintiff's exhibits. Instead, all of the facts relating to other loan applications to First Western are taken from the Statement of Uncontested Facts contained in the Final Pretrial Order signed by defendant's counsel.

The court notes additional careless work by plaintiffs' counsel in failing to respond to defendant's 12(e) statement.

reject the application was in no way related to the Watsons' race.

Although the Watsons did provide evidence of all the elements of a *prima facie* case, they must also present some evidence that race was a factor in the decision to reject their application. In *Kaplan v. 442 Wellington Co-op. Bldg. Corp., supra,* Judge Parsons held that where Fair Housing Act plaintiffs did not produce "one shred of evidence" that discrimination based on race occurred, then summary judgment for the defendants was appropriate. The plaintiff's case could not be based on suspicion alone, but if there was any factual question as to the legal propriety of defendant's actions at all, then the plaintiffs would have survived the summary judgment motion.

Here, the only competent evidence the plaintiffs present that their race contributed to the defendant's decision to reject their applications is evidence that at least six applications of white couples for loans were approved by First Western even though their credit histories showed late payments to creditors.[3] This evidence gives rise at least to an inference that the Watsons were treated differently on account of their race. As the court must view the facts in a light most favorable to the non-moving party and make all inferences in favor of the non-moving party, this is enough to deny summary judgment. The evidence regarding other similar loan applications distinguishes this case from *Kaplan, supra.*

The court notes that also included in First Western's loan files are several rejected applications for white couples where the applicants had late payments and one application by a black couple with late payments whose application was granted. The court is of the opinion that there are enough open questions concerning whether any of the loan applicants are similarly situated to the Watsons that summary judgment is inappropriate.

---

3. According to the Statement of Uncontested Facts, those files where white couples received loans despite a history of late payments are: # 284992, # 274638, # 283992, # 284566, # 278142, and # 277033. In one case, the justification for a late payment was that the husband had just changed jobs, a justification similar to the Watsons'. *See* Uncontested Facts ¶ 124.