Carmelo MELENDEZ, Plaintiff,

v.

**ILLINOIS BELL TELEPHONE
COMPANY, Defendant.**

No. 90 C 5020.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 15, 1994.

John H. Hager, Elaine K.B. Siegel, Hager & Siegel, P.C., Chicago, IL, for plaintiff.

Hubert O. Thompson, Henry I. Thomas, Carney & Brothers, Ltd., Chicago, IL, for defendant.

### MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The plaintiff Carmelo Melendez ("Melendez") brought this action on August 8, 1990. In his Third Amended Complaint [1], the plaintiff alleged that the defendant, Illinois Bell Telephone Company ("Illinois Bell"), had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e *et seq.*, and the Civil Rights Act of 1871, 42 U.S.C. Sec. 1981. More specifically, the plaintiff alleges discriminatory hiring practices on the part of the defendant through the use of a preemployment examination.

Following a trial in September of 1993 on the Section 1981 claim, the jury returned a verdict in favor of the defendant. This court entered judgment on September 9, 1993 for the Section 1981 claim and later amended judgment on December 8, 1993.[2] The plaintiff initially filed a motion for a new trial which was subsequently withdrawn on February 11, 1994.[3] (Pl.Reply, p. 1). The Title VII claims are bench issues [4] on which the court has yet to rule.

At issue for the purposes of this opinion is the binding effect of the jury's verdict on the Section 1981 claim as to the remaining Title

---

1. The Third Amended Complaint is dated September 13, 1993. The court gave the plaintiff leave to file the Third Amended Complaint during the jury trial on the Section 1981 claim with the direction that the claims of equitable relief be stricken without prejudice and reasserted at the close of trial. (Tr. at 20, 23).

2. The amended judgment corrected the "final judgment" form which had inadvertently been entered previously.

3. The written withdrawal of the motion contained an agreement on the part of the plaintiff that he would not reassert the motion. (Pl.Reply, p. 1).

4. The Seventh Circuit has held that provisions of the Civil Rights Act of 1991, Pub.L. No. 102–166, section 101, 105 Stat. 1071 (1991) do not apply retroactively to questions of this sort. *Mozee v. American Commercial Marine Service Company,* 963 F.2d 929, 938–939 (7th Cir.1992), *cert denied* —— U.S. ——, 113 S.Ct. 207, 121 L.Ed.2d 148 (1992).

**640**

VII claims brought under the theories of disparate treatment and disparate impact.[5]

## I. Subject Matter Jurisdiction

■ The defendant raises an initial matter in asserting that this court lacks subject matter jurisdiction to resolve the Title VII claims because the plaintiff is not entitled to backpay and does not seek reinstatement. (Def.Ans.Third Amend.Comp., 2nd Aff.Def. and Post-hrg. brief, p. 8 n. 4). It is noteworthy that the defendant does not cite any case law in support of this proposition.

There is nothing in the provision which covers relief available under the statute which suggests that these factors are determinative of the court's subject matter jurisdiction. See 42 U.S.C. Section 2000e–5(g). Moreover, with respect to the remedy of reinstatement, given that the position for which the plaintiff applied, Manager, Urban Affairs, has been abolished reinstatement is not an option. (Def.Sum. of Case, p. 6).

Similarly, the determination of whether the plaintiff is entitled to backpay will be made following the hearing on the disparate impact claim. Whether or not the plaintiff is entitled to such an award is not the deciding factor of the court's subject matter jurisdiction. See *Mustafa Al–Alamin v. Gramley*, 926 F.2d 680 (7th Cir.1991) (federal courts possess broad but not limitless powers to remedy constitutional violations, however, as an initial matter, the federal court must find that a constitutional violation exists).

■ This court has considerable, though not unlimited, discretion to remedy discriminatory practices under Title VII:

Where an employer has engaged in a pattern or practice of unlawful discrimination, affirmative and mandatory relief is required to ensure full enjoyment of the right to equal employment opportunity. 42 U.S.C. sec. 2000e–6(a). In such cases, the court has not only the power but the duty both to enjoin future discrimination and as far as possible to require the elimination of the continuing effects of past discrimination.

*U.S. v. City of Chicago*, 411 F.Supp. 218, 242 (N.D.Ill.1976) [J. Marshall]; See *Philbin v. General Electric Capital Auto Lease, Inc.*, 929 F.2d 321, 323 (7th Cir.1991) (Title VII is remedial legislation which must be construed liberally).

The plaintiff has requested relief which the court has discretion to award if it finds that the plaintiff's claim has merit and the court deems the relief appropriate.[6] Therefore, the plaintiff's entitlement to backpay, which has yet to be determined by the court, and his failure to request reinstatement do not affect this court's subject matter jurisdiction.

Rather, jurisdiction is conferred upon this court pursuant to 42 U.S.C. Section 2000e–5(f) and 28 U.S.C. Section 1343. Section 2000e–5(f)(3) of Title 42 provides in relevant part that:

Each United States district court and each United States court of a place subject to

5. A complete recital of the facts is not necessary for the resolution of the issue addressed in this opinion but will be provided in the Findings of Fact and Conclusions of Law which will be issued following the hearing on the Title VII disparate impact claim.

6. As relief the plaintiff requests:
(a) a declaratory judgment that the BSAT examination discriminates against Hispanic applicants in violation of Title VII, 42 U.S.C. Sec. 2000e *et seq.*
(b) backpay in the amount of $16,666.00
(c) an order that defendant Illinois Bell Telephone Company, its officers, agents, servants, employees and all persons and organizations in active concert or participation with them are permanently enjoined from engaging in any act or practice which has the purpose or effect of discriminating against any applicant

or potential applicant for employment in first-level management positions at Illinois Bell, because of such individual's sex, race, color, or national origin, and specifically from:
(1) Using the BSAT preemployment examination; and
(2) Using any qualifications, tests, standards or procedures for the purpose of hiring applicants for employment in first-level management positions at Illinois Bell, which are not validated as job-related, and which exclude Hispanics from employment opportunities in ratios disproportionate to the exclusion of whites;
(d) Attorneys' fees and costs; and
(e) Such other and further relief as this Court may deem just and equitable.
(Pl.Post-hrg, Mem. pp. 27–28).

the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office ...

Given that the plaintiff alleges that the unlawful employment practice was committed in Illinois[7], pursuant to the above section, this court has jurisdiction.

In further support of this conclusion, Section 1343 of Title 28 provides that the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

With that preliminary issue resolved, the court now considers the preclusive effect of the jury's verdict on the Section 1981 claim with respect to the plaintiff's Title VII claims.

## II. Statute of Limitations

■ As a second threshold issue, the defendant asserts that the plaintiff's Title VII claims are barred in whole or in part by the applicable statute of limitations.[8] (Def.Ans.Third Amend.Comp., p. 9). The defendant raises this as its First Affirmative Defense[9] to the Third Amended Complaint but offers no argument as to the applicability of this defense to the Title VII claims. (Def.Ans.Third Amend.Comp., p. 9).

■ Section 2000e–5(e)[10] governs the limitations periods for Title VII claims and provides, *inter alia*, that the limitations period for filing with the EEOC is 180 days in states without their own agencies to which employment discrimination complaints can be directed. 42 U.S.C. sec. 2000e–5(e). For "deferral" states such as Illinois, however, which have their own agencies with the authority to administer these complaints, the period is extended 300 days. See *Poindexter v. Northrop Corp.*, 728 F.Supp. 1362 (N.D.Ill.1990).

■ In order for the plaintiff's Title VII claims to be timely, the alleged discrimination must have taken place within the 300 days prior to the filing of the EEOC charge.[11] Mr. Melendez filed his charge with

---

7. See Third Amended Complaint.

8. The defendant first asserted this defense in its Answer which was filed October 29, 1990.

9. The statute of limitations defense must be raised as an affirmative defense in order to be preserved. See *McMahon v. Eli Lily & Co.*, 774 F.2d 830, 836–837 (7th Cir.1985).

10. The statutory text provides in pertinent part:
A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred or within thirty days after receiving notice that the State or local agency has terminated the proceedings under State or local law whichever is earlier ...
42 U.S.C. Sec. 2000e–5(e).

11. It should be noted that filing requirements of Title VII are not jurisdictional. See *Elbaz v. Congregation Beth Judea, Inc.*, 812 F.Supp. 802 (N.D.Ill.1992) [J. Aspen]. As the Supreme Court has noted:
a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to

the EEOC on December 21, 1988 (Third Amend.Comp., Count II, para. 3). If the court accepts September 25, 1988, which is the date the plaintiff states that he was notified that he was ineligible for the position for which he applied because he had "failed" the BSAT, as the date the claim was ripe for filing then it is evident that Mr. Melendez is well within the EEOC filing deadlines. (Def.Ans.Third Amend.Comp., para. 17). In addition, the EEOC issued to the plaintiff a right to sue letter which was date stamped July 2, 1990. The letter granted him 90 days upon its receipt to file an action in the Federal District Courts. The plaintiff filed suit on August 8, 1990 within the 90 day deadline.

Therefore, Mr. Melendez's Title VII claims were timely filed.

### III.  Failure to State A Claim

As its third affirmative defense, the defendant asserts that the plaintiff has failed to state a claim upon which relief may be granted arguing that:

the test in question, the BSAT, has been validated pursuant to the EEOC's Uniform Guidelines on Employee Selection Procedures and is a reliable predictor of success in entry-level general management jobs, including the job for which the Plaintiff applied.

(Def.Ans., Third Aff. Def. p. 9).[12]

The issue of whether the BSAT has been validated pursuant to EEOC guidelines is one more properly treated during the hearing on the disparate impact claim. It is one of the elements that the parties must address in the presentation of arguments and thus, is not a bar to a hearing on the claim.

### DISCUSSION

The plaintiff has brought two claims under Title VII; One under the theory of disparate treatment and another under the theory of disparate impact. (Pl.Post-hrg.Mem., p. 1).

■  In general, a Title VII plaintiff can utilize either the disparate impact theory or the disparate treatment theory of discrimination. See 42 U.S.C. Section 2000e et seq. Under the disparate impact approach, a violation is established where an employer is shown to have used a specific employment practice, neutral on its face but causing a substantial adverse impact on a protected group and which cannot be justified as serving a legitimate business goal of the employer. 42 U.S.C. Section 2000e et seq.; See Griggs v. Duke Power Co., 401 U.S. 424, 426, 431, 91 S.Ct. 849, 851, 853, 28 L.Ed.2d 158 (1971) (Title VII proscribes "not only overt discrimination but also practices that are fair in form but discriminatory in practice"); see also E.E.O.C. v. Chicago Miniature Lamp Works, 947 F.2d 292 (7th Cir.1991).

Under the disparate treatment theory, a violation is demonstrated when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion. 42 U.S.C. Sections 2000e et seq., 2000e–2(a).

Although Mr. Melendez does not specifically state in his Third Amended Complaint that he is asserting a Title VII claim under both the disparate impact and disparate treatment theories, the allegations throughout the complaint support claims under both theories. In particular, with respect to the disparate impact claim, the plaintiff asserts in paragraph 19 of the section entitled "The Wrong" that:

In connection with his application for employment at the Company, Mr. Melendez suffered discrimination on account of his hispanic ethnicity and Puerto Rican origin because the BSAT selects applicants for hire in a racial pattern significantly different from that of the pool of applicants.

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–394, 102 S.Ct. 1127, 1132–33, 71 L.Ed.2d 234 (1982).

**12.**  The defendant first asserted this as a defense in its Answer which was filed October 29, 1990.

suit in federal court, but a requirement that like a statute of limitations, is subject to waiver, estoppel, and equitable tolling ...
...  The provision specifying the time for filing charges with the EEOC appears as an entirely separate provision, and it does not speak in any way to the jurisdiction of the district courts.

The BSAT disqualifies substantially disproportionate numbers of hispanics.

(Third Amend.Compl., "The Wrong", para. 19).

The other supporting paragraphs of the disparate impact claim include 2, 13, and 20 of Count II. (Third Amend.Comp.). In addition, the plaintiff does specifically state that he is asserting a claim under the disparate impact theory in his Summary of Plaintiff's Position filed on January 6, 1993.

Therefore, the court will address both the disparate treatment and disparate impact claims.

### A.  Title VII–Disparate Treatment Theory

■ It is a well-settled rule that when Section 1981 and Title VII claims are tried together a jury's verdict binds the judge on factual issues common to both claims. *McKnight v. General Motors Corporation*, 973 F.2d 1366, 1370 (7th Cir.1992), *cert denied*, —— U.S. ——, 113 S.Ct. 1270, 122 L.Ed.2d 665 (1993); *Daniels v. Pipefitters' Association Local Union 597*, 945 F.2d 906, 923 (7th Cir.1991) (citing *McKnight v. General Motors Corporation*, 908 F.2d 104, 112–113 (7th Cir.1990) ("McKnight II")); *Artis v. Hitachi Zosen Clearing, Inc.*, 967 F.2d 1132, 1137 (7th Cir.1992); *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1293–1294 (7th Cir.1987); *Hunter v. Allis–Chalmers Corp., Engine Div.*, 797 F.2d 1417, 1421 (7th Cir.1986).

■ To prevail on a disparate treatment claim, a Title VII plaintiff must prove that he was a victim of intentional discrimination. *Young In Hong v. Children's Memorial Hospital*, 993 F.2d 1257 (7th Cir.1993), *cert denied* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994); *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1250 (7th Cir.1990). The law is well-established in this circuit that the methods of order of proof applicable to Section 1981 and Title VII claims are identi-

cal. *Hong*, 993 F.2d at 1266, n. 7 (citing *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563 (7th Cir.1989); *North v. Madison Area Association for Retarded Citizens Development Centers Corp.*, 844 F.2d 401, 408 (7th Cir.1988); *Ramsey v. American Air Filter Co.*, 772 F.2d 1303, 1307 (7th Cir.1985); *Mason v. Continental Illinois National Bank*, 704 F.2d 361, 364 (7th Cir.1983).

■ Therefore, as the plaintiff concedes [13], the jury's verdict is binding and preclusive as to the Title VII disparate treatment claim. In accordance, the court so holds.

With that matter resolved, the court will now turn to address the Title VII claim brought under the theory of disparate impact.

### B.  Title VII–Disparate Impact Theory

The preclusive effect of the jury's verdict on the disparate impact claim presents a more difficult issue to resolve given that neither the Supreme Court nor the Seventh Circuit has provided much guidance.

In its post-hearing brief, the defendant makes several arguments which in general assert that the jury's verdict on the Section 1981 claim is binding and precludes the court's further consideration of the disparate impact claim. The court finds these arguments unpersuasive and will address them in turn.

■ First, the defendant argues that because the plaintiff failed to request the court to require the jury to return a "special written finding on each issue of fact," he cannot now request the court to make specific findings relevant to his Title VII claims. (Def. Post-hrg.Mem., p. 6). Relying on F.R.C.P. 49(a), the defendant further maintains that the plaintiff is "deemed to have waived his right to a jury trial and findings on the specific factual issues." (Def.Post-hrg.Mem., p. 6).[14]

13.  See Plaintiff's Post-hrg.Mem., p. 1 and Supp. Post-hrg.Mem., p. 2.

14.  Fed.Civ.Proc.Rule 49(a) governs special verdicts and interrogatories and provides:

The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In the event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the

There is well-established precedent that claims brought under Section 1981 are legal in nature and triable to a jury on demand whereas claims brought under Title VII are equitable and therefore, triable to the bench. *Handy Button Machine Co.*, 817 F.2d at 1293 (7th Cir.1987); See e.g. *Daniels,* 945 F.2d at 909. In the case at bar, only the Section 1981 claim was presented before the jury. It follows that the plaintiff was not required to submit questions regarding the specific elements of the disparate impact claim to the jury because that claim was to be tried by the court. Indeed, the plaintiff had no right to a jury trial on his Title VII claims. *Handy Button*, 817 F.2d at 1293. Therefore, F.R.C.P. 49(a) does not preclude the court from conducting a separate hearing as to the disparate impact claim.

Second, the defendant maintains that the jury verdict in its favor suggests that: (1) the jury rejected the testimony of the plaintiff's expert, (2) the jury decided that Dr. Fred Bryant[15] was not an expert qualified to testify in the area of employment testing, (3) the jury rejected Dr. Bryant's testimony that the BSAT[16] was not valid and (4) the plaintiff presented no credible evidence of "lessor discriminatory alternatives that were as effective as the BSAT." (Def.Post-hrg. brief, p. 6).

The defendant further maintains that because the assessment of the credibility of witnesses comes under the purview of the jury, the court must presume that the jury found that the plaintiff's evidence was not credible; and therefore, the court cannot consider it in rendering a decision on the disparate impact claim.

The court disagrees. The credibility of the witnesses falls within the purview of the fact-finder. With respect to those factual elements of the disparate impact claim which were not found by the jury, the court is the trier of fact. Further, at this juncture, the defendant's contentions as to what the jury's verdict suggests in terms of the specific elements of the disparate impact claim are too speculative for the court to base its ruling on. While the defendant's assertions that the court may not second guess the jury's determinations of the credibility of witnesses are well-taken, it is important to bear in mind that the jury did not render a verdict on the disparate impact claim. Therefore, the presence of a jury's verdict on the Section 1981 claim does not foreclose the plaintiff's opportunity to present evidence sufficient to support his disparate impact claim at a hearing.

Instead, the implications of the jury's verdict can more easily be determined by comparing the elements of the Section 1981 claim with those of the disparate impact claim. The critical element in a Section 1981 claim is a showing of intentional discrimination. *East v. City of Chicago,* 719 F.Supp. 683 (N.D.Ill.1989) [J. Shadur] (claim under Section 1981 requires showing of an intent to discriminate which involves the rights enumerated in the statute); *Randle,* 876 F.2d at 568; *North,* 844 F.2d 401, 408; *Yarbrough v. Tower Oldsmobile, Inc.,* 789 F.2d 508, 510–511 (7th Cir.1986); *Mason,* 704 F.2d at 364. *Watson v. Pathway Financial,* 702 F.Supp. 186 (N.D.Ill.1988) [J. Marovich].

With respect to the disparate impact claim, 42 U.S.C. Section 2000e–2(a)[17] defines as an

---

several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or if it fails to do so, it

shall be deemed to have made a finding in accord with the judgment on the special verdict.

**15.** Dr. Bryant offered expert testimony on behalf of the plaintiff.

**16.** Basic Scholastic Aptitude Test or Bell System Ability Test (Def.Post-hrg. brief, p. 6).

**17.** Title 42 U.S.C. Section 2000e–2(a) provides:

(a) It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate

unfair employment practice an employer's discrimination against any individual with respect to hiring or the terms and conditions of employment because of such individual's race, color, religion, sex or, national origin; or to limit, segregate, or classify his employees in ways that would adversely affect any employee because of the employee's race, color, religion, sex or national origin. See *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

▆▆▆▆ The specific elements of a pre–1991 disparate impact claim require that a complaining party: (1) identify the specific employment practice that is allegedly responsible for any observed statistical disparities *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 994, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827 (1988); (2) show that the challenged practice has a significant disparate impact on employment opportunities for whites and nonwhites *Wards Cove,* 490 U.S. at 642, 658, 109 S.Ct. at 2115, 2125; and (3) demonstrate that it is the application of a specific or particular employment practice that has created the disparate impact under attack [18] *Wards Cove,* 490 U.S. at 657, 109 S.Ct. at 2124. If the plaintiff satisfies these burdens of proof, then the case shifts to the employer to offer a business justification for the employment practice. *Wards Cove,* 490 U.S. at 658, 109 S.Ct. at 2125. The business justification stage of disparate impact case consists of two components: (1) a consideration of the justifications an employer offers for his use of these practices; and (2) the availability of alternative practices to achieve the same business ends, with less racial impact. *Wards Cove,* 490 U.S. at 658, 109 S.Ct. at 2125 (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975).

▆▆▆▆ As distinct from a Section 1981 claim, a plaintiff who brings a disparate impact claim need not prove discriminatory intent. *Wards Cove,* 490 U.S. at 645–646, 109 S.Ct. at 2118–2119; *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Council 31 AFSCME v. Ward,* 978 F.2d 373, 378 (7th Cir.1992); *Gilty,* 919 F.2d 1247, 1254 (7th Cir.1990).

A comparison of the elements required under each claim suggest that in issuing a verdict in favor of the defendant on the Section 1981 claim, the jury was stating that it found no intentional discrimination on the part of the defendant. It is equally evident, that the elements of the disparate impact claim remain to be considered.

▆▆▆▆ The defendant next argues that the rule which asserts that a general verdict gives rise to a presumption that the factual issues have been resolved in favor of the prevailing party (see *Wassell v. Adams,* 865 F.2d 849, 855 (7th Cir.1989); *Geldermann, Inc. v. Financial Management Consultants, Inc.,* 785 F.Supp. 1296, 1298 (N.D.Ill.1992) [J. Sharp] ) requires the court to enter judgment in favor of the defendant on the disparate impact claim because the jury's verdict on the Section 1981 claim was in its favor. (Def.Post-hrg.Mem., p. 5). The court disagrees. To accept the defendant's logic would be tantamount to denying the plaintiff any kind of hearing on his Title VII disparate impact claim. The jury was not asked to decide the Title VII disparate impact claim; and a decision was not rendered as to that claim. Therefore, it is the court's task to evaluate the evidence specific to it.

▆▆▆▆ Similarly, the plaintiff goes too far in asserting that the jury verdict has "no effect" on this court's determination of the disparate impact claim. (Supp.Post-hrg., p. 3). This proposition is contrary to established precedent which states that the judge is bound as to the common factual issues between the Section 1981 and Title VII claims. At this point it would be useful to draw a distinction

---

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**18.** This is the causation component of a Title VII plaintiff's prima facie case. *Wards Cove,* 490 U.S. at 656–657, 109 S.Ct. at 2124–2125.

between the preclusive effect of the jury's verdict and the preclusive effect of the fact-finding of the jury as to the issues common to the legal and equitable claims. There may be factual issues that are common to both the Section 1981 and the disparate impact claim, and to that extent the court is bound by those issues, the elements of proof for each claim, however, are different; and therefore, the jury's verdict does not preclude the court from conducting a separate hearing on the disparate impact claim and entering findings of fact and conclusions of law thereto.

There are some Seventh Circuit cases which support this approach. For example, in the first, *Daniels v. Pipefitters' Association Local Union No. 597*, 945 F.2d 906 (7th Cir.1991) *cert denied,* —— U.S. ——, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992), a welder filed suit against his union alleging multiple legal theories and claiming relief under, *inter alia*, Section 1981 and Section 2000e–2 of Title VII. The Section 1981 claim was tried before a jury which rendered a verdict in the plaintiff's favor and awarded him compensatory and punitive damages. The district court then held a bench trial on the Title VII claim and also entered judgment in favor of the plaintiff. On appeal, the union argued that the district court's decision should be reversed because the judge did not make independent findings of fact but instead relied upon the jury's verdict on the Section 1981 and fair representation claims. *Daniels,* 945 F.2d at 923. In particular, the union challenged the evidentiary basis for the district judge's ruling that the union violated Title VII due to the disparate impact of its hiring practices on blacks.[19] *Daniels,* 945 F.2d at 923. After reasserting its position that the jury's fact-finding on issues common to the jury and judge-tried claims is dispositive, the Seventh Circuit noted that:

> [a]lthough the district court adopted the jury's findings of fact, it made additional findings of its own sufficient to support liability under a theory of disparate impact.

*Daniels,* 945 F.2d at 923.

In affirming the district court's decision, the Seventh Circuit emphasized that the trial court credited the testimony of a statistical expert who testified in support of the plaintiff's claim of disparate impact. *Daniels,* 945 F.2d at 923–924.

Applying this approach to the instant set of facts, the court's ruling in *Daniels* suggests that this court can and should make separate findings of fact in ruling upon the disparate impact claim. See *Snider v. Consolidation Coal Co.,* 973 F.2d 555 (7th Cir. 1992) (To the extent that the factual issues differ from the section 1981 claim, the court may enter independent findings of fact and conclusions of law as to the disparate impact claim).

As in *Daniels,* the trial court in *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132 (7th Cir.1992) conducted separate bench and jury trials for the resolution of the equitable and legal claims respectively. In *Artis,* the plaintiff, a journeyman engine lathe operator, brought suit against his employer under Section 1981 and Title VII under a theory of disparate treatment. The jury rendered a verdict in favor of the plaintiff on the Section 1981 claim and awarded compensatory and punitive damages. Following the jury trial, the district court reconsidered its initial decision to allow the failure to recall claim to go to the jury under Section 1981 and vacated the jury's verdict. *Artis,* 967 F.2d at 1135. After holding a bench trial on the Title VII claims, the district court found for the defendant on the Title VII claim which alleged that the defendant failed to train him. *Artis,* 967 F.2d at 1135. The court, however, ruled in favor of the plaintiff on the failure to recall claim and awarded reinstatement, backpay, prejudgment interest, attorney's fees and costs. *Artis,* 967 F.2d at 1135.

The defendant appealed the decision on the Title VII failure to recall claim arguing that there was insufficient evidence to support the ruling and the judge relied improperly on the vacated jury verdict. *Artis,* 967 F.2d at 1135. On appeal, the court found that the district judge followed the jury's

---

**19.** It is important to note however, that the issue of inconsistency between the jury's and the court's ruling was not present because both were in favor of the plaintiff.

verdict on the failure to recall claim and did not comply with Fed.Civ.Proc.Rule 52(a) which requires a judge to make independent findings of fact and conclusions of law. *Artis,* 967 F.2d at 1137.

The court then considered whether the district judge's failure to enter findings of fact and conclusions of law was proper noting that the trial judge did not indicate any disagreement with the jury's verdict on the failure to recall claim but instead commented that it was supported by the evidence. *Artis,* 967 at 1137–1138. The court further stated that a judge should continue to be bound by a jury's findings even if the verdict is vacated "so long as the underlying factfinding is not impugned." *Artis,* 967 F.2d at 1138; See *Bailey v. Northern Indiana Public Service,* 910 F.2d 406 (7th Cir.1990). In adhering to this rule, the court reasoned that, since the jury had already heard the Title VII claim, had rendered a verdict on that claim and the underlying fact-finding remained intact, the district court judge was bound by that verdict; consequently, entering separate findings of fact and conclusions of law would only "rubber stamp" the decision as to a claim that was already decided. *Artis,* 967 F.2d at 1138. Indeed, if the trial judge had found for the defendant on the Title VII failure to recall claim this would in all likelihood be deemed as a verdict inconsistent with the one the jury had previously rendered on that same claim; an outcome the rule is designed to prevent. Such a result would, as the Seventh Circuit notes, "demonstrate the judge's disrespect for the jury's factfinding function." *Artis,* 967 F.2d at 1138.

With respect to the case at bar, however, the Title VII disparate impact claim was never submitted to the jury. While it is clear that the jury's fact-finding on issues common to the Section 1981 claim and the Title VII disparate impact claim are binding on this court, the verdict itself is not binding on the claim since all of the elements have not been considered. Indeed, a ruling can only be made after additional facts relevant to the disparate impact claim have been determined. Thus, the defendant is premature in making the argument that the court's hearing of the disparate impact claim would contravene the rule of avoiding inconsistent verdicts (Def.Response Post-hrg.Mem., p. 7) since neither a verdict nor a ruling on the disparate impact claim has been rendered.[20] Following this line of reasoning, there is no previous verdict as to this claim which could be characterized as being inconsistent with any subsequent ruling made by the court on the claim of disparate impact.

Therefore, the court finds that the defendant's arguments lack merit and are insufficient to alter this court's conclusion that a hearing on the disparate impact claim is warranted. In addition, the court will provide accompanying findings of fact and conclusions of law in compliance with Fed.Civ.Proc. Rule 52(a).[21]

### CONCLUSION

The court holds that the affirmative defenses asserted in the defendant's Answer to the Third Amended Complaint are insufficient to bar the plaintiff's Title VII claims. The jury's verdict in favor of the defendant on the Section 1981 claim, however, precludes the court from further considering the Title VII disparate treatment claim. There-

---

**20.** In any event, the *Artis* case does not address the issue of whether a jury's verdict on a Section 1981 claim binds the court on the disparate impact claim in a manner that precludes the court from ruling in favor of the party who lost on the Section 1981 claim. The Title VII claims in *Artis* were brought under the theory of disparate treatment.

**21.** F.R.C.P. 52(a) states in pertinent part:
In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law, thereon, and judgment shall be entered pursuant to Rule 58.

It should be noted that the court is well aware of the *Artis'* court holding which asserts that to the extent that a judge is bound by the jury's verdict in a joint Title VII section 1981 trial, it has conducted a jury trial within the meaning of Rule 52(a) thereby obviating the need for the trial judge's entry of findings of fact and conclusions of law. *Artis,* 967 F.2d at 1137.

With respect to the case at bar, however, it is consistent with the reasoning in this opinion and the court's determination that a hearing on the disparate impact claim is warranted that this court make findings of fact and conclusions of law.

fore, judgment on the disparate treatment claim is found in favor of the defendant for the foregoing reasons. Entry of judgment on this claim, however, will be postponed pending resolution of the disparate impact claim.

With respect to the Title VII disparate impact claim, this court will conduct a hearing on Monday August 15. Further, in accordance with precedent, the court and the parties are bound by the jury's fact-finding as to the common factual issues which exist between the Section 1981 claim and the Title VII disparate impact claim.

Following the hearing and pursuant to F.R.C.P. 52(a), the court will issue findings of fact and conclusions of law for those issues which are relevant to the Title VII disparate impact claim.